STATE of Wisconsin, Plaintiff-Respondent,

v.

Terrance J. SHAW, Defendant-Appellant.†

Court of Appeals

*No. 83-1332-CR. Submitted on briefs November 9, 1984.—Decided April 25, 1985.*
(Also reported in 369 N.W.2d 772.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant the cause was submitted on the briefs of *Mary E. Waitrovich,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before GARTZKE, P.J., DYKMAN, J. and BRUCE F. BEILFUSS, Reserve Judge.

BEILFUSS, Reserve Judge. The defendant, Terrance Shaw, appeals from a judgment convicting him of first-degree murder and first-degree sexual assault. He contends that expert scientific testimony regarding the examination and matching of fingernail clippings was improperly admitted as evidence, and that through defense

counsel's confusion a key prosecution witness was not cross-examined about that witness's alleged perjury in a different action, thereby requiring a new trial in the interests of justice.

The admission of the scientific testimony was not an abuse of discretion and a new trial is not required by the interests of justice. We therefore affirm the judgment.

The victim was sexually assaulted and murdered April 14, 1981. Investigators discovered a small piece of fingernail at the crime scene. In the course of investigation approximately one year later, the defendant was interviewed and consented to the taking of fingernail and blood samples. Nail clippings were taken at that time. The following day Dennis Clark, an acquaintance of the defendant, drove the defendant to a clinic to give a blood sample for the investigation. The defendant testified that during the ride back after giving the blood sample, he told Dennis Clark he did not commit the murder. Dennis Clark testified that during the ride the defendant admitted he committed the murder.

The defendant moved pretrial to exclude scientific evidence and examination results regarding the fingernail clipping comparison of the nail found at the crime scene and that taken from the defendant. The motion alleged as grounds that no valid scientific basis existed for establishing such comparisons to any degree of scientific certainty. The trial court, after a hearing, denied the motion and stated it would allow a properly qualified expert to testify on the use of fingernail clipping comparisons for identification purposes because the testimony was related to a science sufficiently developed for assertion of reasonably reliable opinion.

The state and defendant presented at trial expert testimony regarding microscopic comparison of the defendant's fingernail and a piece of fingernail found under the victim's body. The state's expert testified that the

nail samples matched. The defendant's expert testified that they did not match.

Dennis Clark testified that the defendant admitted the murder to him. The defendant offered a witness who would testify that Dennis Clark admitted perjuring himself in an unrelated action. The defendant relied on sec. 904.05(2), Stats.,[1] for admission of this testimony. The trial court excluded the testimony because sec. 904.05 (2) authorizes the admission of instances of conduct to show character when character is an essential element of a charge or defense, and Dennis Clark was not charged. The defendant did not cross-examine Clark about the alleged perjury.

### Fingernail Comparison Evidence

The defendant contends that the trial court improperly admitted the fingernail comparison evidence because the scientific principle underlying the comparison is not generally accepted within its scientific field, and because the relevant scientific field was not definitively identified. The evidence was premised on the theory that human fingernails possess distinct and unique longitudinal striations. The state alleged the clipping comparison fell into the scientific field occupied by ballistics and fingerprints.

The defendant's contention is based upon the standard for admissibility set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (the *"Frye* test"), which requires general acceptance of the scientific principle underlying the evidence offered.

[1] Section 904.05(2), Stats., provides:

In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

The *Frye* test was recently rejected in *State v. Walstad,* 119 Wis. 2d 483, 351 N.W.2d 469 (1984). *Walstad* states that evidence given by a qualified expert is admissible irrespective of the underlying scientific theory. "The fundamental determination of admissibility comes at the time the witness is 'qualified' as an expert." *Id.* at 518–19, 351 N.W.2d at 487. The underlying scientific theory is subject to cross-examination and impeachment, and its credibility is for the finder of fact. *Id.*

Under *Walstad,* expert scientific testimony must be relevant, sec. 904.01, Stats., and the expert must be qualified by virtue of sec. 907.02, Stats.

The defendant contends that even if *Frye* is rejected, a relevancy determination subsumes a reliability determination because probative value is inextricably tied to reliability. The defendant states: "The necessary measure of reliability becomes apparent by recognition that the relevancy test is a development of the *Frye* test which incorporates the 'general acceptance' standard into its structure." The defendant contends that the testimony did not meet this reliability standard, and its admission was, therefore, erroneous and denied defendant a fair trial.

*Walstad* imposes no threshold of reliability other than that implicit in a determination of relevancy and qualification of the expert. Under sec. 904.01, Stats., the testimony must have probative value. Under sec. 907.02, Stats., the testimony must be scientific knowledge that aids the fact finder and must be given by a witness expert based upon his knowledge, skill, experience or training. The testimony's reliability, after relevancy and qualifications are established, is a credibility issue for the fact finder.

The trial court rejected the *Frye* test in a memorandum decision following a pretrial hearing and instead

applied the test for admissibility of expert testimony stated in *In Matter of Adoption of R.P.R.,* 95 Wis. 2d 573, 590, 291 N.W.2d 591, 599, (Ct. App.), *rev'd,* 98 Wis. 2d 613, 297 N.W.2d 833 (1980).[2] The trial court noted that the court of appeals' *R.P.R.* was reversed by the supreme court, but concluded that the reversal did not reject the standard for admissibility set forth by the court of appeals. The trial court's application of *R.P.R.,* even if erroneous, is not grounds for reversal. We will review the record for reasons to sustain the court's exercise of discretion, *Hammen v. State,* 87 Wis. 2d 791, 800, 275 N.W.2d 709, 714 (1979), and will not find an abuse if the court's determination was reasonable. *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983).

The trial court's admission of the scientific testimony was reasonable. The witness testified to his doctorate education as a geochemist and his lengthy experience as chief of the physical evidence section at the Institute of Forensic Sciences. His work at the Institute included supervision of examination and analysis of evidence pertaining to, among other things, firearms, blood and hair. He testified to and summarized several articles, authored by experts recognized in the field of forensic sciences, regarding fingernail comparisons for identification purposes. They were received into evidence. The witness authored one of the articles. The witness testified to his previous experience with fingernail comparisons in several criminal cases and to his general study of fingernail comparisons. From this experience and study he concluded that fingernail striations are unique to the individual and their comparisons

---

[2] The court of appeals in *R.P.R.* stated that expert testimony was admissible if (1) it related to a subject beyond lay knowledge, (2) the expert possessed enough skill to aid the fact finder, and (3) the field was sufficiently developed to permit reasonable opinion. 95 Wis. 2d at 590, 291 N.W.2d at 599.

are useful for identification purposes. He testified that the fingernail clippings of the defendant and that found at the crime scene matched.

The court could reasonably conclude that the expert's testimony that the fingernail clippings matched tended to make the fact of the defendant's guilt more probable than it would be without the evidence, and was therefore relevant under sec. 904.01, Stats. The court could also reasonably conclude the state's expert witness had the qualifications necessary to offer opinions about the fingernail striations and their significance. Admission of the evidence was not an abuse of discretion.

## New Trial in the Interests of Justice

The defendant contends a new trial in the interests of justice is necessary because defense counsel failed to cross-examine Dennis Clark regarding his alleged perjured testimony in an unrelated action. Clark was cross-examined by the defendant's attorneys, but not about the alleged perjury.

The defendant offered the testimony of a witness who, according to the offer of proof, would testify that Dennis Clark stated that he perjured himself in an unrelated action. The testimony was excluded. The defendant erroneously relied on sec. 904.05(2), Stats., for admission of the testimony and concedes that error on appeal. Section 904.05(2) permits admission of conduct evidence to prove character when the "character . . . of a person is an essential element of a charge, claim, or defense . . . ." Dennis Clark was not charged, nor was his character an essential element of the defense.

The defendant argues in support of a new trial that the alleged admitted perjury was admissible under sec. 906.08(2), Stats., which states:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crimes as provided in s. 906.09, may not be proved by extrinsic evidence. They may, however, subject to s. 972.11(2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness.

The defendant contends that because the evidence was admissible under this section, the jury was deprived of crucial credibility evidence which necessitates a new trial. The defendant cites *State v. Cuyler,* 110 Wis. 2d 133, 142, 327 N.W.2d 662, 667 (1983) in support of this contention:

The rule often stated by this court is that " 'a new trial in the interest of justice will be granted only if there has been an apparent miscarriage of justice and it appears that a retrial under optimum circumstances will produce a different result.' " *Garcia v. State,* 73 Wis. 2d 651, 654, 245 N.W.2d 654 (1976), quoting *Jones (George Michael) v. State,* 70 Wis. 2d 41, 56, 233 N.W.2d 430 (1975), and *State v. Elson,* 60 Wis. 2d 54, 69, 208 N.W. 2d 363 (1973). . . .

Because opinion evidence was erroneously excluded, the defendant did not have a full trial on the issue of credibility, which is the crux of the case. This case is similar to both *Logan v. State,* 43 Wis. 2d 128, 168 N.W. 2d 171 (1969), and *Garcia v. State,* 73 Wis. 2d 651, 245 N.W.2d 654 (1976), in which we granted new trials in the interest of justice. In this case, as in *Logan* and in *Garcia,* the major issue was the credibility of the witnesses, and the jury was not given the opportunity to hear important testimony that bore on that issue.

In *Logan,* we remanded for a new trial because "counsel's confusion resulted in the omission of highly probative evidence, which, if believed, could have materially altered the result of the trial. It went directly to the crux of the case—the credibility of the defendant as contrasted with the credibility of the complaining witness." *Logan v. State, supra,* 43 Wis. 2d at 137. In

*Garcia* we emphasized that "[t]he administration of justice is and should be a search for the truth," and that the jury cannot search for truth if it cannot consider relevant and admissible evidence on a critical issue in the case. *Garcia v. State, supra,* 73 Wis. 2d at 655.

*Id.*

The defendant argues that were Clark cross-examined about the alleged perjury, his credibility would have been so damaged as to alter the jury verdict. The record does not support this argument.

The defendant extensively cross-examined Clark. This cross-examination was directed toward Clark's credibility and possible motives for committing perjury in defendant's trial, including Clark's alleged anger over his wife's dates with the defendant. The defendant presented testimony of witnesses who testified that Clark had a poor reputation for truthfulness or a motive for lying about the defendant's admission of the crime. The jury chose to believe Clark despite this evidence. Cross-examination of Clark regarding his alleged perjury in an unrelated action would not have significantly added to the reputation testimony that was presented. Because it does not appear that cross-examination of Clark regarding the alleged perjury would result in a different verdict, this court will not order a retrial. The trial court's judgment is affirmed.

*By the Court.*—Judgment affirmed.