Theresa HOEKSTRA, Plaintiff-Appellant,

v.

GUARDIAN PIPELINE, LLC, Defendant-Respondent.†
[Case No. 2003AP2809.]

JULIE SITOR LIVING TRUST, Donna Kuchar and
Trustee, Plaintiffs-Appellants,

v.

GUARDIAN PIPELINE, LLC, Defendant-Respondent.†
[Case No. 2004AP445.]

The BORCHARDT LOVING TRUST, Wayne R. Borchardt
and Doris E. Borchardt and Trustees,
Plaintiffs-Appellants,

v.

GUARDIAN PIPELINE, LLC, Defendant-Respondent.†
[Case No. 2004AP828.]

Court of Appeals

*Nos. 2003AP2809, 2004AP445, 2004AP828. Submitted on briefs
April 20, 2005.—Decided November 30, 2006.*

2006 WI App 245

(Also reported in 726 N.W.2d 648.)

† Petition For Review Filed.

171

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert W. Roth* now of *Niebler & Roth LLP*, Waukesha, and *William L. Shenkenberg* of *Davis & Kuelthau, S.C.*, Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Allen A. Arntsen* and *Jeffrey Simmons* of *Foley & Lardner, LLC*, Madison.

Before Lundsten, P.J., Deininger and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. This is a consolidated appeal of three separate actions brought under WIS. STAT. ch. 32 (2003–04),[1] Wisconsin's eminent domain chapter. Theresa Hoekstra, the Julie Sitor Living Trust and the Borchardt Loving Trust (collectively, the Landowners) appeal from three separate judgments and orders[2] arising from condemnation proceedings in which Guardian Pipeline, LLC condemned portions of the Landowners' properties to obtain an easement for a natural gas transmission pipeline.

¶ 2. In this appeal we address four issues. The first issue is whether evidence of comparable sales in a condemnation proceeding is the only admissible evidence in determining the fair market value of property taken for the purpose of installing a natural gas transmission pipeline, when such evidence is available. The trial court excluded expert testimony regarding the after-takings

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The Hoekstra case proceeded first and was tried to a jury on August 19 and 20, 2003. The Sitor and Borchardt cases were both resolved on summary judgment following court orders granting Guardian's motions in limine to exclude the evidence at issue in this appeal.

value of each Landowner's property because the Landowners' experts relied on factors other than comparable sales data in determining severance damages. We conclude that, under the plain language of WIS. STAT. § 32.09(6g),[3] WIS. STAT. § 32.09(1m),[4] and the case law interpreting these statutes, the trial court erroneously excluded this testimony based on its erroneous conclusion that evidence of comparable sales is the only admissible evidence in a condemnation proceeding where such evidence is available.

¶ 3. The second issue is whether, under the real estate disclosure requirements set forth in WIS. STAT. § 709.02(1),[5] the Landowners would be required to

---

[3] WISCONSIN STAT. § 32.09(6g) reads as follows:

In the case of the taking of an easement, the compensation to be paid by the condemnor shall be determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the items of loss or damage to the property enumerated in sub. (6)(a) to (g) where shown to exist.

[4] WISCONSIN STAT. § 32.09(1m) reads as follows:

As a basis for determining value, a commission in condemnation or a court may consider the price and other terms and circumstances of any good faith sale or contract to sell and purchase comparable property. A sale or contract is comparable within the meaning of this subsection if it was made within a reasonable time before or after the date of evaluation and the property is sufficiently similar in the relevant market, with respect to situation, usability, improvements and other characteristics, to warrant a reasonable belief that it is comparable to the property being valued.

[5] WISCONSIN STAT. § 709.02(1) reads in pertinent part:

In regard to transfers described in s. 709.01, the owner of the property shall furnish, not later than 10 days after acceptance of a

174

disclose all possible hazards associated with the pipeline. Under § 709.02(1), a seller of real estate is required to disclose to potential buyers all known defects within ten days after acceptance of an offer to purchase the property. Based on this statute, the Landowners argue that their property values were further diminished by the requirement that they disclose all hazards and, therefore, that expert evidence of such hazards was improperly excluded. We conclude that the trial court properly exercised its discretion in excluding this evidence because, according to the plain language of WIS. STAT. § 709.03, a seller is not required to disclose all possible hazards associated with a characteristic of a property. As applied here, a seller is simply required to disclose to a prospective buyer, in general terms, the existence of the pipeline on the seller's property.

¶ 4. The third issue we address is whether the trial court erroneously excluded expert testimony proferred by the Landowners regarding survey evidence and evidence related to fear, stigma and safety issues about natural gas transmission pipelines. We conclude that the trial court's exclusion of this testimony was proper, although for reasons not relied on by the trial court.

¶ 5. The fourth and final issue on appeal is whether the trial court erroneously excluded evidence of damage to trees that were either removed and/or transplanted as a result of installing the pipeline. Based on the application of the "unit rule," which prohibits valuing individual property interests separately from the property as a whole, we conclude that the trial court

contract of sale or option contract, to the prospective buyer of the property a completed copy of the report [disclosing conditions including defects] under s. 709.03 . . . .

properly excluded this evidence.[6] We therefore affirm in part and reverse in part the trial court's judgments and orders and remand for further proceedings on all three cases.

## BACKGROUND

¶ 6. The following facts are undisputed.[7] All three properties at issue are modest-sized farms, under 100 acres each, located in Walworth County. Pursuant to WIS. STAT. § 32.06, Guardian obtained easements to install a natural gas transmission pipeline running underneath each property. The pipeline is part of a major transmission line that is buried underground and is capable of transporting large volumes of natural gas at 1000 pounds of pressure per square inch. The pipeline, which is not visible above ground other than being marked with stakes, extends across 140.3 miles through Illinois and Wisconsin.

---

[6] The Landowners also contend that their constitutional rights to just compensation and to procedural and substantive due process were violated because the trial court excluded the Landowners' real estate appraisal experts from testifying. Because we reverse on this issue and remand for further proceedings, we do not need to address these constitutional claims.

[7] We repeat here the same concern that we noted in *Arents v. ANR Pipeline Co.*, 2005 WI App 61 n.2, 281 Wis. 2d 173, 696 N.W.2d 194 (citation omitted):

> WISCONSIN STAT. RULE 809.19(1)(sd) and (e) (2001–02) requires the parties to provide in their briefs separate sections for their "statement of facts relevant to the issues presented for review" and argument. In their [statement of facts], the Landowners have, inappropriately, interspersed legal argument and "spin" into what should have been an objective recitation of the factual occurrences of this case. "[F]acts must be stated with absolute, uncompromising accuracy. They should never be overstated—or understated, or 'fudged'[—in] any manner." The fact section of a brief is no place for argument.

¶ 7. Guardian filed a *lis pendens* taking legal possession of easement rights on Hoekstra's, Sitor's, and Borchardt's properties. The Walworth County Condemnation Commission held hearings on each property's condemnation pursuant to Wis. Stat. ch. 32, and issued just compensation awards to Hoekstra, the Sitor Trust, and the Borchardt Trust.

¶ 8. Each Landowner appealed the commission's just compensation decision to the trial court pursuant to Wis. Stat. § 32.06(10).[8] Each case proceeded separately after the court denied a motion to consolidate the three cases for purposes of trial.

¶ 9. In Hoekstra's case, the trial court granted Guardian's motions in limine and excluded much of Hoekstra's expert evidence. Particulars of the proposed evidence for the Hoekstra case, as well as in the Sitor and Borchardt cases, will be discussed in greater detail later in this opinion.

¶ 10. One subject of the motions was the admissibility of real estate appraisal testimony. After taking offers of proof from Hoekstra's real estate appraisers, Kurt Kielisch and Jerome Chucka, and Guardian's appraiser, Scott MacWilliams, about their respective methods of appraisal, the court determined that the method used by MacWilliams was proper and rejected the methods used by Kielisch and Chucka, barring them from offering testimony on the after-takings value of Hoekstra's property. Consequently, the jury

---

[8] Wisconsin Stat. § 32.06(10) reads in pertinent part:

Within 60 days after the date of filing of the commission's award either condemnor or owner may appeal to the circuit court by giving notice of appeal to the opposite party and to the clerk of the circuit court . . . . The clerk shall thereupon enter the appeal as an action pending in said court [which] shall be tried by jury unless waived by both plaintiff and defendant.

heard only MacWilliam's appraisal estimation, that there was no loss in value to the Hoekstra property due to the taking and pipeline installation. Based on that testimony, the jury awarded no damages to Hoekstra, and the trial court entered judgment against Hoekstra.

¶ 11. Sitor and Borchardt also did not fare well in their appeals to the circuit court. The trial court granted Guardian's motions in limine in both the Sitor and Borchardt cases for the same reasons as in the Hoekstra case, and consequently granted summary judgment to Guardian in both cases. The circuit court also denied Borchardt damages for the expense of moving trees off the pipeline easement.

¶ 12. The Landowners appeal. We granted their request to consolidate these appeals.

## DISCUSSION

¶ 13. "The sole issues to be tried in an eminent domain case are questions of title and just compensation." *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 11, 281 Wis. 2d 173, 696 N.W.2d 194; *see also* WIS. STAT. § 32.05(11).[9] Just compensation is the only issue in this appeal. The rules governing the determination of just compensation in the taking of an easement are set forth in WIS. STAT. § 32.09(6g), which states that just compensation is calculated "by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation . . . ." We refer to that difference as "severance

---

[9] WISCONSIN STAT. § 32.05(11) provides in pertinent part that, "[t]he sole issues to be tried shall be questions of title, if any, under ss. 32.11 and 32.12 and the amount of just compensation to be paid by condemnor."

damages." *See* WIS. STAT. § 32.09(6)(e); *see also Arents*, 281 Wis. 2d 173, ¶ 14. We apply the following definitions in just compensation determinations:

> Severance damages are defined as "the diminution in the fair market value of the remaining land that occurs because of [a] taking." Fair market value is defined as that amount which can be realized on sale by an owner willing, but not compelled, to sell to a purchaser willing and able, but not obliged, to buy.

*Id.* (citations omitted). Also, WIS. STAT. § 32.09(1m) provides:

> As a basis for determining value, a commission in condemnation or a court may consider the price and other terms and circumstances of any good faith sale or contract to sell and purchase comparable property. A sale or contract is comparable within the meaning of this subsection if it was made within a reasonable time before or after the date of evaluation and the property is sufficiently similar in the relevant market, with respect to situation, usability, improvements and other characteristics, to warrant a reasonable belief that it is comparable to the property being valued.

■■■■■■

¶ 14. The dispute in this case centers on the different approaches employed by the appraisers to determine the value of the easements taken and the severance damage to the remainder of the property not taken. The Landowners challenge several rulings made by the trial court relating to the admissibility of expert testimony. "The admissibility of expert evidence is left to the sound discretion of the trial court." *Arents*, 281 Wis. 2d 173, ¶ 13. "Expert testimony is admissible if the witness is qualified as an expert and has specialized knowledge that is relevant." *Id.* Expert testimony is relevant if it assists the trier of fact in understanding the

evidence or in determining a fact at issue. *State v. Davis,* 2002 WI 75, ¶ 17, 254 Wis. 2d 1, 645 N.W.2d 913; Wis. STAT. § 907.02. The relevance of an expert's testimony turns on the probative value of that testimony. *State v. Shaw,* 124 Wis. 2d 363, 367, 369 N.W.2d 772 (Ct. App. 1985); *see also* Wis. STAT. § 904.01. Under Wis. STAT. § 907.02, expert testimony will be excluded only if the testimony is superfluous or a waste of time. *See State v. Walstad,* 119 Wis. 2d 483, 516, 351 N.W.2d 469 (1984). The reliability of an expert's testimony is a credibility determination to be made by the fact finder. *State v. Stinson,* 134 Wis. 2d 224, 234, 397 N.W.2d 136 (Ct. App. 1986). Evidence given by a qualified expert is admissible regardless of the underlying theory. *Walstad,* 119 Wis. 2d at 518–19. "The fundamental determination of admissibility comes at the time the witness is 'qualified' as an expert." *Id.* We will sustain a court's evidentiary rulings if the court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Arents,* 281 Wis. 2d 173, ¶ 12 (citations omitted).

*I. Real Estate Appraisers' Testimony*

¶ 15. The Landowners argue that the trial court erroneously exercised its discretion in excluding the testimony of the Landowners' real estate appraisal experts, Kielisch and Chucka. They argue that the court erroneously concluded that where comparable sales data exists, severance damage assessments based on other evidence, such as fear and stigma related to a natural gas transmission line located on a landowner's property, are inadmissible. We agree, and conclude the trial court erred in determining that evidence of comparable sales is the only admissible evidence in a

180

condemnation proceeding where such evidence is available.

¶ 16. In *Arents* we addressed and resolved the issue of whether evidence of comparable sales is the only admissible evidence in condemnation proceedings where such evidence is available. We said:

> Evidence of comparable sales *may* be considered in determining the fair market value of the whole property immediately after the taking. *See* Wis. Stat. § 32.09(1m). *In addition, any factor* affecting the value of property that could influence or sway the decision of a prospective buyer *should* be considered in the valuation of property in a condemnation proceeding [which may include the factors in Wis. Stat. § 32.09(6)(a)-(g) and other factors that] are relevant and not remote or speculative.[10]

*Arents*, 281 Wis. 2d 173, ¶ 15 (citations omitted) (emphasis added). We concluded in *Arents* that:

---

[10] Guardian cites *Weeden v. City of Beloit*, 29 Wis. 2d 662, 668, 139 N.W.2d 616 (1966) and *Bear v. Kenosha County*, 22 Wis. 2d 92, 100, 125 N.W.2d 375 (1963), for the proposition that an "expert witness testifying as to value of property which he has examined should base his opinion on comparable sales as an element of value if such sales exist." *Weeden*, 29 Wis. 2d at 668. We observe that both cases were decided long before Wis. Stat. §§ 32.09(1m) and 32.09(6) were enacted, which, as we explained, plainly permit the admission of other non-income evidence going to fair market value as long as it is relevant. Thus, the continuing vitality of the limited rule as stated in both cases is in doubt.

Guardian also argues, relying on *National Automobile Truckstops, Inc. v. State Department of Transportation*, 2003 WI 95, ¶ 25, 263 Wis. 2d 649, 665 N.W.2d 198; *Leathem Smith Lodge, Inc. v. State*, 94 Wis. 2d 406, 288 N.W.2d 808 (1980); and *Rademann v. State Department of Transportation*, 2002 WI App 59, ¶ 9, 252 Wis. 2d 191, 642 N.W.2d 600, that where compa-

where the requisite nexus has been established by a qualified expert between the evidence of fear regarding the presence of a natural gas transmission pipeline on condemned property and the fair market value of that property following the taking and the evidence is relevant and not speculative, remote or a waste of time, such evidence may be admissible in a condemnation proceeding to determine the diminution value of that property.

*Id.*, ¶ 18.[11] We also concluded in *Arents* that while comparable sales may be the "best evidence" of the fair market value of property immediately after a taking, it is by no means the *only* admissible evidence of fair market value. *Id.*, ¶¶ 15, 29 (citing WIS. STAT. § 32.09(6)(a)-(g); *Clarmar Realty Co., v. Redevelopment*

---

rable sales evidence is available, the *only* admissible evidence is evidence of other comparable sales. Guardian's reliance on these cases is misplaced. The issue in all three cases related to the admissibility of *income evidence* where comparable sales evidence was available. *Truckstops*, 263 Wis. 2d 649, ¶ 3; *Leathem Smith*, 94 Wis. 2d at 411–13; *Rademann*, 252 Wis. 2d 191, ¶¶ 28–32. We agree that these cases hold that income evidence is not admissible when there is evidence of comparable sales. But this case does not involve income evidence. Thus, none of these cases apply to the facts presented in this case.

[11] Other jurisdictions have admitted evidence regarding fear and safety concerns about natural gas transmission pipelines, electrical transmission lines and oil and gasoline pipelines in easement cases. *See* Vitauts M. Gulbis, Annotation, *Fear of Powerline, Gas or Oil Pipeline, or Related Structure as Element of Damages in Easement Condemnation Proceeding*, 23 A.L.R. 4th 631 (1983), for a thorough review and analysis of the state and federal eminent domain cases which have determined whether, and under what circumstances, the measure of damages includes the fear or apprehension of danger due to the installation or maintenance of an electric transmission line or a natural gas, oil, or other chemical pipeline.

*Auth. of Milwaukee*, 129 Wis. 2d 81, 91, 383 N.W.2d 890 (1986)).[12] Accordingly, we conclude that the trial court applied the wrong legal standard in excluding the Landowners' appraisal evidence for determining severance damages.

¶ 17. Having concluded that the trial court misapplied the law regarding the admissibility of other evidence related to severance damages, we also conclude that the trial court erroneously exercised its discretion by excluding the testimonies of expert witnesses Kielisch and Chucka. Both experts relied on information which we determined in *Arents* is admissible in condemnation proceedings in determining the after-takings value of the Landowners' respective properties. We examine the information each expert relied on in arriving at the property values and discuss why this information is relevant in these proceedings.

¶ 18. Turning first to the Hoekstra property, Chucka was not able to identify any comparable properties[13] from which he could measure the after-takings

---

[12] *See also* WIS. STAT. § 32.09(1m) and Wisconsin's Civil Jury Instructions on the determination of fair market value in eminent domain cases:

> [Y]ou may base your determination [of fair market value] on the most advantageous use thus shown to exist, either at the time in question or within a reasonable time in the near future. The future uses considered, if any, must be so reasonably probable as to affect present market value .... *Everything that gave this parcel of real estate intrinsic value, as shown by the evidence, is proper for your consideration.*

WIS JI—CIVIL 8100 (Eminent Domain: Fair Market Value) (emphasis added).

[13] According to Chucka, a comparable property would have been purchased immediately before installation of a gas trans-

fair market value. Consequently, he turned to other information to determine the after-takings fair market value, such as information gleaned from developers who had changed their minds about purchasing land once learning of the presence of a gas pipeline on the property. Chucka also relied on the results of a telephone survey conducted in Walworth and Jefferson Counties by Dr. James W. Peltier, chairman of the marketing department at the University of Wisconsin-Whitewater, which described how a property's value might change because of a seller's disclosure of conditions associated with natural gas transmission pipelines and the potential hazards associated with them. Chucka also assessed Hoekstra's property in terms of its potential uses, zoning, and the location of the pipeline, as well as certain features of the pipeline, such as the lack of any odor to the gas which could identify the presence of a leak.

¶ 19. Kielisch also failed to find comparable properties encumbered by a pipeline to use in determining an after-takings value. Instead, his valuation of severance damages was largely based on two studies related to the effect of pipeline-related stigma on property values and applied the market approach to determining before and after-takings value.

¶ 20. Kielisch's first study examined the impact of pipeline stigma on residential property values. He first surveyed the media coverage regarding the safety of pipelines and found it to be overwhelmingly negative, focusing mainly on the dangers of leaks and explosions.

mission pipeline on that parcel and then sold again after the pipeline had been constructed. Chucka found no properties that met these criteria. We state no opinion as to whether Chucka's definition of comparable property in the context of the present facts is acceptable.

In this study he examined "all studies of media both electronic media, television, cable, radio, as well as written media, newspapers, much of [which] was found over internet research, and research libraries." Kielisch also surveyed 88 realtors, 66% of whom agreed that the presence of a pipeline would decrease the selling price, and 70% of whom viewed the pipeline as a safety risk.[14] In an analysis of 658 properties, 97 of which were encumbered by a gas line, Kielisch determined that the presence of a pipeline reduced a property's value by an average of 15 percent.

¶ 21. Kielisch's second study, which focused on rural properties, revealed that the stigma of a gas pipeline running through a property had a similar harmful impact on property values, with those surveyed consistently expressing that they would pay less for a rural parcel that had a pipeline running through it. Kielisch concluded that the stigma effect a pipeline has on a rural property is 15 percent. Applying easement and severance damages to the pre-takings valuation based on comparable properties, Kielisch concluded that the after-taking fair market value of the Hoekstra property was reduced from its pre-taking value by $34,800.

¶ 22. In Sitor's and Borchardt's cases, Chucka followed a similar assessment method as with the Hoekstra property. In Sitor's case, Chucka used comparable sales to determine that the pre-takings value of Sitor's property was $302,000. He did not use comparable sales to calculate the severance damages. Instead, he presented a letter report explaining why the consid-

---

[14] Kielisch conducted a similar survey of realtors in Waukesha County, which the trial court permitted Kielisch to rely on in determining severance damages in *Arents. See Arents*, 281 Wis. 2d 173, ¶ 25.

eration of two sales of land with gas pipeline easements was not appropriate for determining severance damages. He calculated severance damages of 15% in the value of the property not subject to easements, based on the stigma created by the pipeline's presence. In Borchardt's case, Chucka once again used comparable sales to establish the pre-takings value of the property at $360,000. For the after-takings value he considered the highest and best use of the land and the stigma created by the pipeline, as demonstrated by Peltier's survey. In both cases, upon invitation of the court, Chucka supplemented his expert report, addressing two other properties that might have comparable value. However, he concluded that the properties did not have comparable values and were therefore not considered in his assessment.

¶ 23. We conclude that the information relied upon by both Kielisch and Chucka is relevant to the determination of the after-takings value of the properties at issue in this case. As we explained in *Arents*, evidence regarding fear and stigma of the presence of a natural gas transmission pipeline may be admissible. *Arents*, 281 Wis. 2d 173, ¶ 18. Here, Chucka's appraisal and determination of severance damages was based, in part, on fear and stigma evidence. Coupled with the other criteria he considered in determining severance damages, Chucka's testimony is admissible under Wisconsin's liberal rules on the admissibility of expert testimony. *See* Wis. Stat. § 907.02. Put another way, any flaws relating to Chucka's method in determining severance damages goes to weight, not admissibility.

¶ 24. Similarly, Kielisch relied on survey data relating to fear and stigma related to the presence of the pipeline on the Hoekstra's property, which is admissible under *Arents* and Wisconsin's rules on expert

testimony. WIS. STAT. § 907.02. As with Chucka, Kielisch will be subject to cross-examination by Guardian, which will have the opportunity to expose any flaws in Kielisch's methods. *See Walstad*, 119 Wis. 2d at 518–19.

¶ 25. Guardian points out that both experts improperly relied on Peltier's telephone survey, which, in its view, is seriously flawed. Guardian also asserts that because the Landowners have not demonstrated that other experts in the field usually rely on this type of survey data in forming their opinions of severance damages, the trial court properly barred Kielisch and Chucka from testifying. However, as we will explain below, although we conclude that the trial court properly excluded Peltier from testifying about his survey, we still conclude that both Kielisch and Chucka should be permitted to testify even though their appraisals rely in part on Peltier's survey. Kielisch and Chucka tied the survey results to the particular properties at issue in their assessments, which we concluded in *Arents* was the proper method by which this type of information could be admitted. *Arents*, 281 Wis. 2d 173, ¶ 25. Furthermore, as we discuss in greater detail later in this opinion, fear and stigma evidence is admissible in condemnation proceedings to prove severance damages. Moreover, as the supreme court explained in *Walstad*:

> The fundamental determination of admissibility comes at the time the witness is "qualified" as an expert. In a state such as Wisconsin, where substantially unlimited cross-examination is permitted, the underlying theory or principle on which admissibility is based can be attacked by cross-examination or by other types of impeachment. Whether [an expert] witness whose testimony is relevant is believed is a question of credibility for the finder of fact, but it clearly is admissible.

*Walstad*, 119 Wis. 2d at 518–19.

¶ 26. Ordinarily, our inquiry would stop here be-
cause our conclusion that the trial court erroneously
excluded Kielisch and Chucka from testifying is disposi-
tive. Guardian does not argue that, if it was error to
exclude this testimony, the error was harmless. *See* WIS.
STAT. § 901.03(1).[15] However, because the other issues
the Landowners raise are likely to re-emerge after
remand, and because guidance on these topics will be
helpful in the orderly processing of these cases, we
choose to address those issues in this appeal.

*II. The Duty to Disclose Under WIS. STAT. ch. 709*

■

¶ 27. The Landowners argue that the trial court
erroneously exercised its discretion by excluding testi-
mony related to the duty to disclose certain real estate
defects in real estate transactions, as required by WIS.
STAT. ch. 709.[16] Under ch. 709, sellers of residential
property are required to disclose certain defects on
their property within ten days of receipt of an offer to
purchase. WIS. STAT. § 709.02(1). The Landowners con-
tend that WIS. STAT. § 709.02(1) requires them to dis-
close to potential buyers the presence of the gas pipe-
lines and all hazards associated with the pipelines, such
as details about the odorless, high pressure, flammable,
and explosive gas running through them. We decline to

---

[15] WISCONSIN STAT. § 901.03(1) provides that an "[e]rror may
not be predicated upon a ruling which admits or excludes
evidence unless a substantial right of the party is affected . . . ."

[16] Neither party questions whether the existence of a natu-
ral gas transmission pipeline underneath a property is a defect
within the meaning of WIS. STAT. ch. 709. We assume for
argument's sake that it is. We make clear, however, that we do
not decide that question in this opinion.

188

read the requirements of ch. 709 on disclosure responsibilities this broadly. Accordingly, we conclude the trial court properly exercised its discretion in excluding the evidence relating to the ch. 709 disclosure rules.[17]

¶ 28. As a threshold matter, we note that the disclosure requirements of WIS. STAT. ch. 709 do not apply to the Borchardt Trust property because the property is vacant agricultural land. Chapter 709 does not apply to "property that has not been inhabited." WIS. STAT. § 709.01(1).

¶ 29. Turning to the balance of the Landowners' argument, nothing in WIS. STAT. ch. 709 requires the Landowners to disclose all potential risks conceivably associated with the pipeline. Sellers of real estate are required to disclose general descriptions of potential defects in the property. *See* WIS. STAT. §§ 709.02 and 709.03. There is nothing in the text of these statutes that requires a seller to provide details of specific safety and health hazards associated with any property defect. It is apparent from the language of the standard defect disclosure report form provided by § 709.03 that the disclosure requirement is satisfied by the simple acknowledgement that "I am aware of an 'LP' tank on the property," or "I am aware of . . . radium in water supplies, lead in paint, lead in soil . . . or other potentially

---

[17] The Landowners separately argue that the trial court improperly excluded the testimony of two expert witnesses, Attorney Mark C. Young and Terry Donahue, a licensed real estate broker, who would have testified about the real estate disclosure requirements in WIS. STAT. ch. 709. Rather than address these arguments separately, we address both arguments simultaneously by discussing why the court did not improperly exclude evidence of the real estate disclosure requirements without reference to the experts through whom this evidence would have been introduced.

hazardous or toxic substances on the premises." The defect disclosures required by the statute are phrased in the same general terms, such as "I am aware of [insert defect] on the property."[18] While the form does not contain language specific to natural gas transmission pipeline disclosures, by following the model language of the form, we conclude that the required disclosure in this case does not need to be more specific than "I am aware of an underground natural gas transmission pipeline on the property." The plain language of ch. 709 does not require a seller to disclose any more information than the presence of the pipeline on the property, let alone the litany of potential problems that could foreseeably arise as a result of the pipeline's presence.

¶ 30. The Landowners also argue that the common law imposes disclosure duties which could affect the value of their property. We conclude otherwise, noting that the common law does not mandate such extensive disclosures. Under common law precedent, a seller is not obligated to disclose facts "readily discernible to the purchaser." *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 42, 288 N.W.2d 95 (1980). This principle is consistent with related common law principles in Wisconsin that buyers have an obligation to discern the truth about matters that may be discerned through ordinary attention. *See W.H. Hobbs Supply Co. v. Ernst*, 270 Wis. 166, 170–71, 70 N.W.2d 615 (1955), and that the duty to warn of dangers does not extend to protecting against every manifest or obvious danger. *See Caraher v. City of Menomonie*, 2002 WI App 184, ¶ 15,

---

[18] WISCONSIN STAT. § 709.03 enumerates twenty-eight items requiring disclosure, most of which are particular defects.

256 Wis. 2d 605, 649 N.W.2d 344. Consequently, under common law rules on this topic, a seller of land with a gas pipeline running underneath it would be required to disclose the existence of the pipeline, but not all potential hazards associated with the pipeline. *See Ollerman*, 94 Wis. 2d at 26–43.

*III. Exclusion of Other Expert Testimony*

¶ 31. The Landowners argue that the trial court improperly prohibited their other expert witnesses from testifying. More specifically, the Landowners argue that the trial court erroneously exercised its discretion by barring the introduction of evidence relating to stigma and fear of the natural gas transmission pipeline. The Landowners assert that stigma and fear associated with a natural gas pipeline has a significant impact on the fair market value of the Landowners' property.

¶ 32. We first address the court's exclusion of the marketing survey conducted by Peltier related to fear and stigma of the presence of a gas pipeline on residential property, along with that study's results. Peltier conducted a telephone survey of homeowners in Walworth and Jefferson Counties, the results of which, the Landowners assert, demonstrate a reduction in the fair market value of their properties due to the presence of the pipeline. In granting Guardian's motion to exclude Peltier's testimony, the trial court explained that "public opinion surveys simply [are] not relevant to the sole issue in this case, which is the market value . . . ." We conclude the trial court properly excluded Peltier's testimony, although we reach that conclusion on grounds other than those provided by the trial court.

¶ 33. We first observe that it appears that the trial court excluded Peltier's testimony, as well as the testimony of the Landowners' other expert witnesses, Richard Kuprewicz, Benjamin J. Pooler and Bruce Nilles, on the mistaken belief that where comparable sales evidence is available, evidence other than comparable sales evidence is not admissible to prove severance damages. As we have explained, we concluded in *Arents*, relying on the plain language of WIS. STAT. §§ 32.09(1m) and 32.09(6g), and our review of eminent domain case law in Wisconsin, that comparable sales evidence is not the only relevant evidence admissible in determining fair market value in a condemnation proceeding where such evidence is available. *Arents*, 281 Wis. 2d 173, ¶ 29. Any factor affecting the value of property that could influence or sway the decision of a prospective buyer should be considered in the valuation of property in a condemnation proceeding, as long as the evidence is relevant, and not remote or speculative. *Id.*, ¶ 15. Thus, it appears that the trial court misapplied the law in excluding the testimony of the Landowners' expert witnesses. However, on review we look for reasons to sustain the trial court's discretionary decision. *Loomans v. Milwaukee Mut. Ins. Co.*, 38 Wis. 2d 656, 662, 158 N.W.2d 318 (1968). Furthermore, if the trial court reaches the right result in excluding evidence but does so for the wrong reason, we must affirm. *State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679 (Ct. App. 1985). In this case, although the trial court misapplied the law in excluding the testimony of the Landowners' expert witnesses, we conclude that the trial court reached the right result in excluding this evidence, since the evidence should have been excluded on relevance grounds.

¶ 34. Turning first to Peltier's survey evidence, although we recognize that, in general, survey data in Wisconsin may be admissible under the proper circumstances, *see Brain v. Mann*, 129 Wis. 2d 447, 459–63, 385 N.W.2d 227 (Ct. App. 1986), we conclude that Peltier's survey data, which was offered to show that the presence of a gas pipeline on a property in Walworth and Jefferson Counties decreases by 20% the amount a buyer is willing to pay for the property, does not specifically address the impact of fear and stigma on the particular properties at issue in this case. Put another way, Peltier fails to draw the requisite nexus connecting the data collected and interpreted in his survey and expert report to the fair market value of the properties at issue here before and after the takings. In *Arents*, we addressed the admissibility of Peltier's study and concluded that the court reasonably excluded the Peltier survey as irrelevant because it did not sufficiently connect the survey data to the particular condemned properties or consider certain relevant aspects of the specific properties affected by the pipeline. *Arents*, 281 Wis. 2d 173, ¶ 24. We reach the same conclusion here.

¶ 35. The Landowners next argue that the trial court erroneously excluded testimony from Pooler, Kuprewicz and Nilles about the characteristics of and the safety concerns associated with natural gas transmission pipelines. The Landowners assert that evidence provided by these experts related to the hazards associated with a natural gas transmission pipeline is relevant because of the likely negative impact on a potential buyer's willingness to purchase property containing such a pipeline. They contend that these experts' testimony, like Peltier's, would support their argument that "the forced disclosure requirements of common law and

Wis. Stat. Ch. 709 affect the price a willing buyer will pay for their property." We disagree that the exclusion of this testimony was erroneous.

¶ 36. As we have explained, Wis. Stat. ch. 709 does not require the Landowners to disclose all conceivable hazards associated with the pipeline; since such disclosures are not required under ch. 709, expert testimony on this topic was not relevant and is therefore inadmissible. Furthermore, we have already resolved this issue in *Arents*, where we held that the court properly excluded general expert testimony about the safety of gas pipelines where such evidence was not sufficiently related to the market value of the properties at issue. *Arents*, 281 Wis. 2d 173, ¶¶ 19, 34–35.

██

¶ 37. More specifically, the Landowners retained Kuprewicz, president of a pipeline consulting firm, to testify about "the effects of natural gas pipeline leaks, ruptures, and explosions including past instances of pipeline accidents and failures," among other things. The Landowners have not demonstrated that Kuprewicz would have been able to tie this information to the effect of the pipeline on the values of the particular properties at hand. Thus, the trial court properly excluded this evidence on the basis of relevance.

██

¶ 38. Similarly, Pooler, who has "thirty plus years of experience in the fields of environmental, safety and health, fire equipment and fire equipment servicing," was asked to testify about the "characteristics, hazards and safety issues associated with natural gas transmission pipelines, including causes of and effects of pipeline accidents, leaks, ruptures and explosions, and past incidents of pipeline accidents and failures." Pooler was also prepared to testify about the impact that installing

a natural gas transmission pipeline would have in general on adjacent properties, such as diminution in value of property, loss of property use, restricted market appeal, safety and health issues, and the negative effect the pipeline would have on the surrounding environment. We recognize that under the proper circumstances this type of evidence may be relevant in a condemnation proceeding involving the location of a natural gas transmission pipeline. However, the flaw here, as with the other expert testimony, is that Pooler does not connect this information with the potential or actual impact on the fair market value of the specific properties at issue in this case. Under WIS. STAT. § 907.03,[19] the Landowners may have been able to admit this evidence had a real estate appraisal expert or other similar type of expert offered an opinion of the fair market value of their particular properties based, in part, on this information. However, since that is not the case here, the trial court properly excluded this evidence.

¶ 39. In regard to Nilles, an attorney who formerly worked for the U.S. Department of Justice, Environmental and Natural Resources Division, the Landowners intended to offer his testimony about certain deficiencies in the federal pipeline safety program. As with the testimony of Kuprewicz and Pooler, the Landowners failed to establish how Nilles' testi-

---

[19] WISCONSIN STAT. § 907.03 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

mony would have drawn the requisite nexus between these deficiencies and the after-takings value of these properties. In other words, the Landowners have not shown that this testimony ties alleged deficiencies in the federal pipeline safety program to particular reduced fair market values of their particular properties. We conclude that the trial court properly excluded this testimony.

## IV. "OTHER DAMAGE" EVIDENCE: THE UNIT RULE

¶ 40. Hoekstra and Borchardt argue that the trial court erroneously excluded evidence of "other damage" to items on their properties. More specifically, they contend that the trial court erroneously excluded the testimony of two experts, David Farina and Charles Kempken, regarding the net loss in value to their properties allegedly caused by the removal and/or transplanting of trees from these properties. They assert that they are entitled to have the jury consider and value these items based on their construction of Wis. Stat. § 32.09(6g), and case law interpreting the statute.

¶ 41. It appears that the court excluded this testimony on several grounds. The court first determined that it was inappropriate in eminent domain cases to value the trees separately from the property as a whole. The second reason the court relied on for excluding the experts' testimony was that "[l]oss of profits are not recoverable or provable in condemnation" of either an owner or lessee's interest," citing *Fiorini v. City of Kenosha*, 208 Wis. 496, 498, 243 N.W. 761 (1932). In addition, the court found that it was undisputed that the trees were owned by Hoekstra's tenant, who had an oral lease for less than one year and was not a party to

the proceedings. Finally, in the Borchardt Trust case, the court determined that the value of the trees should not be assessed separately from the whole property value and that the cost of transplanting the trees was not recoverable under condemnation law because there was no evidence that those costs were related to a loss in value of the property. We conclude that the trial court correctly determined that the Landowners are not entitled to these damages.

¶ 42. On appeal, the Landowners challenge only the court's determination that the value of the trees should not be assessed separately from the property as a whole. Therefore, we address only this basis for excluding the testimony of the two experts.

¶ 43. Under Wisconsin eminent domain law, we apply the "unit rule," which prohibits valuing individual property interests or aspects (in this case, the Landowners' trees) separately from the property as a whole. When a parcel of land is taken in an eminent domain case, "the compensation award [] is for the land itself and not for the sum of the different interests therein . . . ." *Green Bay Broad. Co. v. Redevelopment Auth. of the City of Green Bay*, 116 Wis. 2d 1, 11, 342 N.W.2d 27 (1983) (citation omitted). As Wisconsin's Civil Jury Instructions on the unit rule states:

> [The] presence of [marketable deposits on the property] is not to be considered as in itself affording a basis or measure of recovery, but only as explaining and supporting the expert opinions given of the fair market value of the *(name)* real estate as a whole before and after the taking. The value of the [deposit] should not be considered independently of the value of the real estate.

Wɪs JI—Cɪvɪʟ 8102 (Eminent Domain: Fair Market

Value: Lands Containing Marketable Deposits). Consequently, a just compensation determination is based on the fair market value of the land as a whole, which "is not obtained by adding up a number of separate items, but by taking a comprehensive view of each and all of the elements of property, tangible and intangible, including property rights, and considering them all not as separate things, but as inseparable parts of one harmonious entity . . . ." *Milwaukee & Suburban Transp. Corp. v. Milwaukee County*, 82 Wis. 2d 420, 448–49, 263 N.W.2d 503 (1978) (citation omitted). The "unit rule" approach to assessing severance damages is well-established under Wisconsin law and "its acceptance is beyond question." *Green Bay Broad. Co.* 116 Wis. 2d at 11.

¶ 44. On appeal, Hoekstra and Borchardt concede that the testimony of Farina and Kempken would not be offered to establish the market value of the property as a whole before and after the taking; they offered separate testimony from appraisers on that point, discussed at length above. Nonetheless, they maintain that the testimony of Farina and Kempken is relevant to the establishment of the net loss in value to their properties based on the loss or damages of the property's components. However, we agree with Guardian that the valuation of a property's components separately from fair market value is precisely what the unit rule prohibits. We conclude that the trial court property excluded this evidence.

## CONCLUSION

¶ 45. We conclude that the trial court erroneously exercised its discretion in excluding the testimony of the Landowners' experts Kielisch and Chucka. We also

conclude, however, that the trial court properly excluded the Landowners' other experts from testifying, including Peltier, Kuprewicz, Pooler and Nilles. Finally, we conclude that the court properly exercised its discretion by excluding expert testimony regarding the real estate disclosure requirements under WIS. STAT. ch. 709 and common law, and by excluding expert testimony relating to the cost of tree removal on the Hoekstra and Borchardt properties. Accordingly, we affirm in part, and reverse in part the court's orders excluding evidence, and remand for further proceedings.

*By the Court.*—Judgments and orders affirmed in part; reversed in part and cause remanded for further proceedings.