N. PATRICK CROOKS, J.
¶ 1. This is a review of an unpublished court of appeals decision that upheld Luis M. Rocha-Mayo's convictions for first-degree reckless homicide by use of a dangerous weapon, homicide by intoxicated use of a vehicle, first-degree reckless endangerment by use of a dangerous weapon, and operating a motor vehicle without a valid license causing death to another person.[1] The convictions stem from a high-speed collision involving Rocha-Mayo's car and two motorcycles. The collision resulted in the death of one motorcyclist as well as injuries to Rocha-Mayo.
¶ 2. During trial, the State introduced the preliminary breath test (PBT) result obtained from Rocha-Mayo by an emergency room (ER) nurse for diagnostic *88 purposes. The Kenosha County Circuit Court, the Honorable Wilbur W Warren III presiding, utilized Wis JI — Criminal 1185[2] in instructing the jury on the PBT result. Over Rocha-Mayo's objection, the State also offered testimony from Dr. William Falco, an ER physician who treated Rocha-Mayo. The physician testified that Rocha-Mayo appeared to be intoxicated at the time he was undergoing treatment in the ER.
¶ 3. Rocha-Mayo asks this court to review three issues. First, whether Wisconsin statutes governing breath alcohol testing allow admission of a PBT result as evidence of intoxication in operating while intoxicated (OWI) related trials when the results are not *89 obtained by law enforcement. Second, whether the circuit court improperly instructed the jury in regard to the PBT result. Third, whether the circuit court erred in allowing an ER physician to testify that Rocha-Mayo appeared intoxicated while being treated in the ER. The State asserts that the circuit court did not err in any regard. In the alternative, the State contends that any circuit court error was harmless.
¶ 4. Since we conclude that this case can and should be resolved by application of a harmless error analysis, we assume, without deciding, that the circuit court erred when it allowed the State to admit, as evidence, the PBT result obtained by a medical professional for diagnostic purposes. Likewise, we assume, without deciding, that the circuit court erred under these circumstances in utilizing Wis JI — Criminal 1185 to instruct the jury on its use of the PBT evidence. We conclude, however, that the circuit court did exercise appropriate discretion when it allowed Dr. Falco to testify that, based on his observations and medical experience, Rocha-Mayo was intoxicated while undergoing treatment in the ER. We agree with the court of appeals that "[t]he legal concept at issue was whether Rocha-Mayo was under the influence of an intoxicant at the time he operated the motor vehicle."[3] Dr. Falco's testimony related only to his observations of Rocha-Mayo in the ER, and he did not testify about Rocha-Mayo's driving ability on the night of the accident. In fact, Dr. Falco specifically testified that he could not give any indication of Rocha-Mayo's level of intoxication at the time of the accident.
*90 ¶ 5. Although we assume without deciding that the circuit court erred in admitting the PBT result as evidence and in instructing the jury in regard to the PBT, we conclude that these alleged errors were harmless beyond a reasonable doubt. Even without the PBT evidence, the jury heard evidence of Rocha-Mayo's level of intoxication from witnesses and from Rocha-Mayo himself. Rocha-Mayo admitted that he consumed two or three beers at home and an additional five or six beers at a bar, and that he was drinking alcohol in his car just prior to the collision. Dr. Falco and Steven Edwards, an ER nurse, testified that they could smell alcohol on Rocha-Mayo's breath in the ER. Finally, Dr. Falco testified that Rocha-Mayo appeared to be intoxicated while being treated in the ER. We therefore conclude, beyond a reasonable doubt, that any error by the circuit court did not contribute to the verdict.
I. Background
¶ 6. At trial, the facts leading up to the collision were disputed. We discuss only those facts relevant to our decision.
¶ 7. On June 22, 2008, Rocha-Mayo left El Rodeo,[4] a bar in Kenosha, Wisconsin, at approximately 2:00 a.m., around the time of the bar's closing.[5] He left the bar in his vehicle and started traveling west on 52nd Street. Shortly after leaving the bar, Rocha-Mayo encountered three motorcyclists. One of the motorcycles in the group also carried a passenger.
*91 ¶ 8. At that point, the descriptions of what happened diverge; however, a road-rage type incident unfolded in which Rocha-Mayo and the motorcyclists were driving within close proximity to one another. At one point one of the motorcyclists threw a metal baton through Rocha-Mayo's rear window. The motorcycle carrying two people turned off of 52nd Street. The other two motorcyclists and Rocha-Mayo continued traveling on 52nd Street at high rates of speed upwards of 70 miles per hour (mph).
¶ 9. At the intersection of 52nd Street and Green Bay Road, Rocha-Mayo's vehicle struck one of the motorcycles. That motorcyclist later died of his injuries. The other motorcyclist was uninjured and left the scene of the accident. Rocha-Mayo also sustained injuries and was taken to St. Catherine's Medical Center.
¶ 10. Dr. Falco and Edwards attended to Rocha-Mayo in the ER and examined him for a possible head injury. Dr. Falco and Edwards both testified that they could smell alcohol on Rocha-Mayo's breath. Dr. Falco also testified that he observed Rocha-Mayo talking rapidly on his phone upon arrival, and that Rocha-Mayo had a diminished memory of the accident. Rocha-Mayo also told Dr. Falco that he had been drinking alcohol.
¶ 11. Due to these observations, Dr. Falco ordered Edwards to test Rocha-Mayo's breath for the presence of alcohol to determine whether Rocha-Mayo's symptoms might be alcohol-related. Edwards performed the PBT and recorded a result of 0.086.[6]
*92 ¶ 12. Rocha-Mayo sought to exclude the PBT test result from his trial. He argued that Wis. Stat. § 343.303[7] prohibits the use of PBT results in OWI-related trials. The circuit court denied his motion to suppress the result. The circuit court reasoned that Wis. Stat. § 343.303 must be read in its entirety, and that the plain language of the statute applies to PBT results obtained by law enforcement. Therefore, the circuit court found that the PBT result was admissible because it was taken by a medical professional for diagnostic purposes. In addition, the PBT was not taken at the direction of, or at the request of, law enforcement. The circuit court pointed out that no law enforcement officers were present in the ER at the time Edwards administered the PBT.
¶ 13. Rocha-Mayo proceeded to trial on the charges of first-degree reckless homicide by use of a dangerous weapon, homicide by intoxicated use of a vehicle, and first-degree reckless endangerment by use of a dangerous weapon. Before trial, he pleaded guilty to the charge of operating a motor vehicle without a valid license causing death to another person.
¶ 14. At trial, the State presented several witnesses who observed the motorcyclists and Rocha-Mayo on 52nd Street prior to the collision. These witnesses consistently estimated that the vehicles were traveling upwards of 70 mph. A police officer on patrol observed the vehicles just prior to the accident and testified that all three were driving "recklessly and at a high rate of speed" that he estimated as between 70 and 80 mph.
*93 ¶ 15. The State also elicited other testimony regarding Rocha-Mayo's level of intoxication. A police officer who obtained a statement from Rocha-Mayo read the statement during her trial testimony. In this statement Rocha-Mayo admitted to drinking three beers at his home between 7 p.m. and 9 p.m. before going to El Rodeo, where, he admitted, he drank another six beers.[8] Rocha-Mayo's statement also provided information that he purchased two six-packs of beer from the bar as he left and that he continued to drink an open beer in his car as he drove away from the bar. A third officer testified that he inspected Rocha-Mayo's car following the accident and that he observed one empty beer bottle and five full beer bottles scattered on the front floorboard of the car.
¶ 16. The State also called El Rodeo's owner, who worked as a bartender on the night in question, as a witness. She testified that she did not recall serving alcohol to Rocha-Mayo and that she could not remember selling him any packaged alcohol. On cross-examination, the bar owner testified that Rocha-Mayo did not appear to be intoxicated, but she then admitted that her recollection of the evening was poor. When pressed, she testified that she did not recall Rocha-Mayo exhibiting any obvious signs of intoxication, such as falling down.
¶ 17. The State also presented testimony from Dr. Falco and Edwards who both testified that they could smell alcohol on Rocha-Mayo's breath. In addi *94 tion, Dr. Falco testified that, in his professional opinion, Rocha-Mayo was intoxicated at the time he was treated in the ER.
¶ 18. A jury found Rocha-Mayo guilty of all charges.[9]
¶ 19. The court of appeals affirmed. Like the circuit court, it found that the plain language of Wis. Stat. § 343.303 applies only to PBT results obtained by law enforcement. It concluded that the circuit court's decision to allow the PBT result was a proper exercise of discretion. The court of appeals also rejected Rocha-Mayo's argument that the circuit court erred in utilizing Wis JI — Criminal 1185 when instructing the jury that it could rely on the PBT result as evidence of intoxication because the instruction allowed, but did not require, the jury to find that the defendant was under the influence of an intoxicant at the time of the alleged operating. Finally, the court of appeals found that Dr. Falco's testimony, that Rocha-Mayo appeared intoxicated while in the ER, was not error because he offered no opinion on Rocha-Mayo's state of intoxication at the time of the accident.
¶ 20. This case presents four issues. First, whether Wis. Stat. § 343.303 prohibits the admission of a PBT test result obtained by a medical professional in an OWI-related trial. Second, whether the circuit court erred in utilizing Wis JI — Criminal 1185 to instruct the jury on its use of the PBT evidence. Third, whether Dr. Falco's testimony, that Rocha-Mayo was intoxicated while in the ER, was improper because it embraced a *95 "legal concept for which a definitional instruction was required." Finally, whether circuit court error, if any, was harmless.
¶ 21. We assume without deciding that the circuit court erred when it admitted the PBT result and instructed the jury on that result. Therefore, we first address whether the circuit court erred in allowing Dr. Falco's testimony. We then turn to the parties' harmless error arguments.
II. Standard of Review
¶ 22. We review a prior court's admission of evidence under the erroneous exercise of discretion standard. State v. Doss, 2008 WI 93, ¶ 19, 312 Wis. 2d 570, 754 N.W.2d 150. That means we will not overturn the prior court's determination unless there is a clear showing of such discretion having been exercised in an erroneous manner. Id. "A proper exercise of discretion requires that the circuit court rely on facts of record, the applicable law, and, using a demonstrable rational process, reach a reasonable decision." Id.
¶ 23. Our harmless error analysis requires us to determine whether the error in question affected the jury's verdict. State v. Weed, 2003 WI 85, ¶ 29, 263 Wis. 2d 434, 666 N.W.2d 485. Therefore, we ask, "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" State v. Harvey, 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting Neder v. U.S., 527 U.S. 1, 18 (1999)).
*96 III. Analysis
A. Admissibility of Dr. Falco's Testimony
¶ 24. Rocha-Mayo argues that the circuit court erred when, over his objection, it allowed Dr. Falco to testify that, in his expert opinion, Rocha-Mayo was intoxicated at the time he was treated in the ER. Rocha-Mayo's argument is that Dr. Falco's testimony was improper because it "embraced a legal concept for which a definitional instruction was required." The legal concept to which Rocha-Mayo refers is the definition of "under the influence of an intoxicant," which was one element of the charge of homicide by intoxicated use of a vehicle. As to this charge, the circuit court instructed the jury, "The third element is the defendant was under the influence of an intoxicant at the time the defendant operated a vehicle. 'Under the influence of an intoxicant' means that the defendant's ability to operate a vehicle was materially impaired because of consumption of an alcoholic beverage." (Emphasis added.)
¶ 25. In contrast, the State argues that Dr. Falco never offered any opinion as to Rocha-Mayo's condition or level of intoxication at the time of the accident. In fact, the State points out that Dr. Falco specifically testified that he could not make any judgment as to Rocha-Mayo's blood alcohol content at the time he operated his vehicle or his ability to operate a vehicle.
¶ 26. Wisconsin Stat. § 907.04 governs "opinion on ultimate issue." It states, "[tjestimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Wis. Stat. § 907.04. Both parties agree that Dr. Falco's testimony was permissible *97 under Wis. Stat. § 907.04. However, Rocha-Mayo argues that the circuit court erred in allowing Dr. Falco to testify in regard to his level of intoxication because the definitional instruction for "under the influence of an intoxicant" was required.
¶ 27. The court of appeals has explained that the "ultimate issue" described in Wis. Stat. § 907.04 cannot "be one that is a legal concept for which the jury needs definitional instructions." Lievrouw v. Roth, 157 Wis. 2d 332, 351-52, 459 N.W.2d 850 (1990).
¶ 28. Here, we conclude that Dr. Falco's testimony complies with both Wis. Stat. § 907.04 and Lievrouw. This is because the ultimate issue at stake was whether Rocha-Mayo was intoxicated at the time of the collision. Furthermore, a significant part of the defense was that even if Rocha-Mayo was intoxicated while driving, the accident would have occurred regardless of that fact.[10]
¶ 29. Dr. Falco's testimony was permissible because it did not embrace the ultimate issue: whether Rocha-Mayo was intoxicated at the time of the accident. As previously noted, Dr. Falco's testimony related only to his belief that Rocha-Mayo was intoxicated while undergoing treatment in the ER. Furthermore, Dr. Falco did not give any opinion as to Rocha-Mayo's ability to drive his vehicle safely. In fact, on cross-examination Rocha-Mayo's counsel specifically asked Dr. Falco if he could opine on Rocha-Mayo's level of intoxication at the time of the accident. After explain *98 ing that Rocha-Mayo's blood alcohol level on the night of the accident would have fluctuated depending on the rate his body metabolized the alcohol, Dr. Falco responded, "I cannot." Therefore, we conclude that the circuit court acted appropriately within its discretion when it allowed Dr. Falco to testify about Rocha-Mayo's state of intoxication while he was being treated in the ER.
B. Harmless Error
¶ 30. Rocha-Mayo argues that any circuit court error related to the PBT evidence or the instruction to the jury regarding the PBT results cannot be harmless error. We disagree. While we assume without deciding that admission of the PBT result and the jury instruction at issue was error, we conclude that these errors were harmless beyond a reasonable doubt. In other words, we conclude that admission of the PBT result and the use of Wisconsin JI — Criminal 1185, in regard to the PBT evidence, did not affect the jury's verdict. It is clear beyond a reasonable doubt that the jury would have found the defendant guilty absent the alleged errors.
¶ 31. Under Wisconsin statutes and precedent, harmless error analysis is applicable to this case. Wisconsin Stat. § 805.18(2) provides,
No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of... the improper admission of evidence . . . unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.
*99 (Emphasis added.) Although Wis. Stat. § 805.18 specifically applies to civil procedure, this statute is applicable to criminal proceedings through Wis. Stat. § 972.11(1).[11] Harvey, 254 Wis. 2d 442, ¶ 39.
¶ 32. In Harvey, this court addressed the application of harmless error analysis in the context of a challenged jury instruction. Id., ¶ 6. In doing so, we relied heavily on Neder, 527 U.S. 1. Id., ¶¶ 35-46. In considering the language of Wis. Stat. § 805.18, we also relied on the following question when conducting harmless error analysis: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" Harvey, 254 Wis. 2d 442, ¶ 46 (quoting Neder, 527 U.S. at 18).
¶ 33. The following year we again found guidance from Harvey and Neder in discussing harmless error analysis in the context of an alleged confrontation clause violation. Weed, 263 Wis. 2d 434, ¶ 29. In doing so, we again relied on the harmless error test set forth in Harvey. Id. (citing Harvey, 254 Wis. 2d 442, ¶ 44).
¶ 34. Assuming, without deciding, that the circuit court erred when it allowed admission of the PBT result and the corresponding jury instruction, we conclude that such alleged errors were harmless. This is because the jury heard ample evidence to conclude that Rocha-Mayo was intoxicated at the time of the accident.
¶ 35. First, while speed is not necessarily indicative of intoxication, the jury heard from multiple witnesses who all testified that Rocha-Mayo and the mo *100 torcyclists were driving recklessly and traveling at high rates of speed. Witnesses consistently estimated that the vehicles were travelling between 70 and 80 mph along 52nd Street. At the point where a patrol officer observed the vehicles, the posted speed limit on 52nd Street was 30 mph.
¶ 36. In addition, the jury heard evidence of Rocha-Mayo's level of intoxication. First, the jury heard Rocha-Mayo's statement to police in which he admitted to drinking three beers at his home between 7 p.m. and 9 p.m. His statement also provided that he arrived at El Rodeo around 9 p.m. and that he consumed an additional six beers before purchasing two six-packs of beer from the bar as he left. His statement and his testimony at trial was that he carried a partially consumed bottle of beer to his car and finished that beer while driving his vehicle.[12] Rocha-Mayo's statements were confirmed in part by a police officer who testified that he examined Rocha-Mayo's vehicle after the accident. This officer found one empty bottle of beer and five unopened bottles in Rocha-Mayo's vehicle.
¶ 37. The jury also heard testimony from Dr. Falco and Edwards who both attended to Rocha-Mayo in the ER. Rocha-Mayo told Dr. Falco that he had been drinking alcohol immediately prior to the collision. Dr. Falco and Edwards both testified that they could smell alcohol on Rocha-Mayo's breath. In addition, Dr. Falco testified that, based on his observations *101 and experience, Rocha-Mayo was intoxicated while undergoing treatment in the ER.[13]
¶ 38. Due to other evidence of Rocha-Mayo's intoxication, we conclude, beyond a reasonable doubt, that admission of the PBT result and the related jury instruction did not affect the jury's verdict. Therefore, assuming, without deciding, that admission of the PBT evidence and use of the corresponding jury instruction were error, we conclude that those alleged errors were harmless beyond a reasonable doubt.
IV Conclusion
¶ 39. This case can and should be resolved by application of a harmless error analysis. We assume, without deciding, that the circuit court erred when it allowed the State to admit, as evidence, the PBT result obtained by a medical professional for diagnostic purposes. Likewise, we assume, without deciding, that the circuit court erred under these circumstances in utilizing Wis JI — Criminal 1185 to instruct the jury on its use of the PBT evidence. We conclude, however, that the circuit court did exercise appropriate discretion when it allowed Dr. Falco to testify that, based on his observations and medical experience, Rocha-Mayo was intoxicated while undergoing treatment in the ER. We agree with the court of appeals that "[t]he legal concept at issue was whether Rocha-Mayo was under the influence of an intoxicant at the time he operated the motor *102 vehicle."[14] Dr. Falco's testimony related only to his observations of Rocha-Mayo in the ER, and he did not testify about Rocha-Mayo's driving ability on the night of the accident. In fact, Dr. Falco specifically testified that he could not give any indication of Rocha-Mayo's level of intoxication at the time of the accident.
¶ 40. Although we assume, without deciding, that the circuit court erred in admitting the PBT result as evidence and in instructing the jury in regard to the PBT, we conclude that these alleged errors were harmless beyond a reasonable doubt. Even without the PBT evidence, the jury heard evidence of Rocha-Mayo's level of intoxication from witnesses and from Rocha-Mayo himself. Rocha-Mayo admitted that he consumed two or three beers at home and an additional five or six beers at a bar and that he was drinking alcohol in his car just prior to the collision. Dr. Falco and Steven Edwards, an ER nurse, testified that they could smell alcohol on Rocha-Mayo's breath in the ER. Finally, Dr. Falco testified that Rocha-Mayo appeared to be intoxicated while being treated in the ER. We therefore conclude, beyond a reasonable doubt, that any error by the circuit court did not contribute to the verdict.

By the Court.

The decision of the court of appeals is affirmed.

 State v. Rocha-Mayo, No. 2011AP2548-CR, unpublished slip op. (Wis. Ct. App. Apr. 24, 2013).

 Wisconsin JI — Criminal 1185 addresses the charge of "Homicide by Operation of a Vehicle While Under the Influence." Utilizing a slightly modified version of the instruction, the circuit court instructed the jury, in part,
If you are satisfied beyond a reasonable doubt that there was .08 grams or more of alcohol in 210 liters of the defendant's breath at the time the test was taken, you may find that the defendant was under the influence of an intoxicant at the time of the alleged operating, but you are not required to do so. You the jury are here to decide this question on the basis of all the evidence in this case, and you should not find that the defendant was under the influence of an intoxicant at the time of the alleged operating, unless you are satisfied of that fact beyond a reasonable doubt.
In contrast, the same passage from the standard Wisconsin JI — Criminal 1185 provides,
If you are satisfied beyond a reasonable doubt that there was .08 grams or more of alcohol in 210 liters of the defendant's breath at the time the test was taken, you may find from that fact alone that the defendant was under the influence of an intoxicant at the time of the alleged operating, but you are not required to do so. You the jury are here to decide this question on the basis of all the evidence in this case, and you should not find that the defendant was under the influence of an intoxicant at the time of the alleged operating, unless you are satisfied of that fact beyond a reasonable doubt.
(Emphasis added.)

 State v. Rocha-Mayo, No. 2011AP2548-CR, unpublished slip op., ¶ 15 (Wis. Ct. App. Apr. 24, 2013).

 Rocha-Mayo also referred to this bar in a statement to police and during his testimony as "Alas de Oro" and "Oro."

 The bar's owner and Rocha-Mayo testified that he left around bar closing time, which occurs at 2:30 a.m. However, police reports and witness accounts of the accident suggest that Rocha-Mayo left the bar closer to 2:00 a.m.

 Since 2003, the legal limit for driving in Wisconsin has been 0.08 BAC. See Wis. Stat. § 346.63; 2003 Wis. Act 30, § 1. However, Wis. Stat. § 346.63(1)(a) generally prohibits driving under the influence of any intoxicant, which "renders him or her incapable of safely driving . ..."

 This and all subsequent references to the Wisconsin statutes are to the 2007-08 version unless otherwise indicated.

 Rocha-Mayo testified at trial. His testimony was largely consistent with his prior statement to police. He testified that he drank two or three beers at home and then consumed an additional five or six beers at the bar.

 As previously noted, Rocha-Mayo had pleaded guilty to the charge of operating a motor vehicle without a valid license causing death to another person prior to his trial.

 As we noted previously, Wis JI — Criminal 1185, addresses the charge of "Homicide by Operation of a Vehicle While Under the Influence." From this instruction the jury was told, "Wisconsin law provides that it is a defense to this crime if the death would have occurred even if the defendant had been exercising due care and had not been under the influence of an intoxicant." Wis JI — Criminal 1185.

 The applicable portion of Wis. Stat. § 972.11(1) provides, "Except as provided in subs. (2) to (4), the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction." Subsections (2)-(4) are not applicable to this case.

 Rocha-Mayo testified that the beer he finished in his car was part of the estimated five or six beers that he consumed at the bar.

 As noted previously, El Rodeo's owner testified that she could not recall serving or selling alcoholic beverages to Rocha-Mayo. She admitted, however, that her memory of that night was poor.

 State v. Rocha-Mayo, No. 2011AP2548-CR, unpublished slip op., ¶ 15 (Wis. Ct. App. Apr. 24, 2013).