# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2784 |
| COMPLETE TITLE: | 118th Street Kenosha, LLC, |
| | Plaintiff-Appellant, |
| | v. |
| | Wisconsin Department of Transportation, |
| | Defendant-Respondent-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 352 Wis. 2d 183, 841 N.W.2d 568)
(Ct. App. 2013 – Published)
PDC No.: 2013 WI App 147

| | |
|---|---|
| OPINION FILED: | December 10, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 10, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Kenosha |
| JUDGE: | Bruce E. Schroeder |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-respondent-petitioner, the cause was argued by *Abigail C.S. Potts*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the plaintiff-appellant, there was a brief by *Charles P. Graupner*, *Susan M. Sager*, and *Michael Best & Friedrich LLP*, Milwaukee, with oral argument by Charles P. Graupner.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2784
(L.C. No. 2011CV212)

STATE OF WISCONSIN        :       IN SUPREME COURT

118th Street Kenosha, LLC,

      Plaintiff-Appellant,

      v.

Wisconsin Department of Transportation,

      Defendant-Respondent-Petitioner.

**FILED**

**DEC 10, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and remanded.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals,[1] which reversed the order of the Kenosha County Circuit Court[2] that granted the Wisconsin Department of Transportation's ("DOT") motion in limine to exclude evidence of diminution in value of commercial property owned by 118th Street Kenosha, LLC ("the LLC"). We

---

[1] 118th St. Kenosha, LLC v. DOT, 2013 WI App 147, 352 Wis. 2d 183, 841 N.W.2d 568.

[2] The Honorable Bruce E. Schroeder presided.

reverse the court of appeals and remand to the circuit court to dismiss the action.

¶2 The LLC owns commercial property consisting of a four-store shopping center in the City of Kenosha. Before 2010 the commercial property had direct access to 118th Avenue by a driveway onto 118th Avenue and indirect access to 118th Avenue by a driveway onto 74th Place, a private road that intersected with 118th Avenue. In 2010 the DOT performed three acts relevant to this case: the DOT (1) relocated 118th Avenue to the east one block, thereby eliminating the commercial property's direct access to 118th Avenue; (2) acquired a temporary limited easement[3] that authorized the DOT to construct a new double-throated driveway connecting the commercial property to 74th Place; and (3) constructed that new driveway onto 74th Place. After the DOT finished these three acts, the commercial property had two driveways to 74th Place, indirect access to 118th Avenue via 74th Place, and no direct access to 118th Avenue. The DOT paid the LLC $21,000 for the temporary limited easement. The LLC and the DOT stipulated that $21,000 was adequate compensation for the temporary limited easement itself. An appraiser determined that the commercial property's value

---

[3] "An easement provides a nonpossessory right to enter and use land in the possession of another that obligates the landowner not to interfere with the uses authorized by the easement." Savage v. Am. Transmission Co., 2013 WI App 20, ¶1, 346 Wis. 2d 130, 828 N.W.2d 244 (citing Restatement (Third) of Prop.: Servitudes § 1.2 (2000)).

declined by $400,000 because the relocation of 118th Avenue caused the commercial property to lose direct access and proximity to 118th Avenue.

¶3    The LLC now seeks to recover damages under Wis. Stat. § 32.09(6g) (2011-12)[4] for the commercial property's diminution in value caused by the relocation of 118th Avenue. Subsection 32.09(6g) provides compensation for diminution in value caused by "the taking of an easement."  Because the temporary limited easement and the relocation of 118th Avenue were both part of the same greater highway reconstruction project, the LLC argues its award for the temporary limited easement under § 32.09(6g) should include damages for the commercial property's decline in value caused by the relocation of 118th Avenue.

¶4    This case presents the following three issues:

---

[4] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.  Subsection (6g) was created by § 7, ch. 440, Laws of 1977, and it provides:

> In the case of the taking of an easement, the compensation to be paid by the condemnor shall be determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the items of loss or damage to the property enumerated in sub. (6)(a) to (g) where shown to exist.

(1) Is a temporary limited easement compensable under Wis. Stat. § 32.09(6g)?[5]

(2) Assuming that a temporary limited easement is compensable under Wis. Stat. § 32.09(6g), did the circuit court appropriately exercise its discretion when it excluded evidence of the commercial property's diminution in value from lost direct access and proximity to 118th Avenue because the temporary limited easement did not cause the loss?

(3) Is the LLC barred from recovering compensation for the commercial property's loss of direct access and proximity to 118th Avenue because the relocation of 118th Avenue was a proper exercise of the DOT's police power?

¶5 The crux of the issue before this court is whether damages under Wis. Stat. § 32.09(6g) for the temporary limited easement include the commercial property's diminution in value caused by its loss of direct access and proximity to 118th Avenue due to that road's relocation, although the temporary limited easement did not cause that loss of direct access and proximity.

¶6 For purposes of our analysis, we assume, without deciding, that a temporary limited easement is compensable under Wis. Stat. § 32.09(6g).

---

[5] The LLC's claim for compensation for loss of direct access and proximity to 118th Avenue is based solely on Wis. Stat. § 32.09(6g). The LLC does not ask us to, and we do not, determine whether the LLC could be entitled to compensation for that loss under any other claim.

¶7    We conclude that the LLC is precluded from seeking damages under Wis. Stat. § 32.09(6g) for the commercial property's diminution in value which resulted from its loss of direct access and proximity to 118th Avenue due to the 118th Avenue relocation.  The temporary limited easement did not cause the commercial property to lose direct access and proximity to 118th Avenue, so damages under § 32.09(6g) for the temporary limited easement cannot include damages for the loss of direct access and proximity to 118th Avenue.  Because the LLC seeks damages for its loss of direct access and proximity to 118th Avenue, the circuit court did not err by excluding evidence of those damages in the § 32.09(6g) claim for taking an easement. Thus, the LLC improperly seeks compensation under § 32.09(6g) for the commercial property's diminution in value based on its lost direct access and proximity to 118th Avenue when 118th Avenue was relocated.  Because our resolution of the narrow issue presented disposes of the LLC's claim, we need not address the other issues presented.  See Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15.

¶8    We affirm the circuit court's grant of the DOT's motion in limine seeking to exclude evidence of damages caused by the LLC's loss of direct access and proximity to 118th Avenue. We reverse the court of appeals and remand to the circuit court to dismiss the action.

I.   FACTUAL BACKGROUND

¶9    The LLC owns 1.83 acres or 79,715 square feet of land ("commercial property") that consists of a one-story strip mall

5

with four stores and restaurants. The commercial property is located at 7300 118th Avenue in the City of Kenosha, just northeast of the intersection of Interstate 94 and State Trunk Highway 50. Before 2010 the eastern side of the commercial property abutted 118th Avenue and the southern side abutted 74th Place, a private road. A driveway on the northeastern side of the commercial property provided direct access to 118th Avenue. An existing single-lane driveway on the southern side of the commercial property provided direct access to 74th Place. The commercial property had indirect access to 118th Avenue via 74th Place, which intersected with the western side of 118th Avenue.

¶10 On January 4, 2010, the DOT acquired a temporary limited easement of .262 acres of the commercial property for the purpose of constructing a new double-throated driveway connecting the commercial property to 74th Place. Sometime in 2010, the DOT built the new driveway.[6] The DOT awarded the LLC $21,000 in damages for the temporary limited easement.[7] This new driveway was located on the southern side of the commercial property, near the commercial property's existing single-lane driveway to 74th Place. Therefore, the double-throated driveway provided the commercial property with two points of direct

---

[6] The record indicates that the new driveway was constructed in 2010 without providing a more specific date.

[7] The record suggests the $21,000 was for the rental value of the property encumbered by the temporary limited easement and for the loss of landscaping that resulted from the temporary limited easement.

access to 74th Place instead of one. The DOT acquired this temporary limited easement as part of a greater highway reconstruction project ("Highway Reconstruction Project").[8]

¶11 Also sometime in 2010, as part of the greater Highway Reconstruction Project, the DOT vacated and relocated to the east one block the portion of 118th Avenue that abutted the LLC's commercial property. After 118th Avenue was relocated, the commercial property no longer abutted the Avenue; thus, it lost direct access to 118th Avenue. The DOT did not alter 74th Place or the fact that it connected to 118th Avenue.

¶12 On January 24, 2011, the LLC appealed to the circuit court the DOT's award and sought additional compensation under Wis. Stat. § 32.09(6g) for the commercial property's decline in value caused by the loss of direct access and proximity to 118th Avenue when the Avenue was relocated. Specifically, the LLC's expert appraiser determined that the commercial property's "loss of direct access to [118th Avenue], and the loss of proximity to [118th Avenue]" caused the commercial property's value to decline by $400,000. The LLC did not allege that $21,000 was inadequate compensation for the temporary limited easement itself. The damages at issue in this appeal instead relate to the property's diminution in value because it lost direct access

---

[8] This project involved the taking of more than 50 temporary limited easements and more than one dozen permanent easements from various landowners.

and proximity to 118th Avenue due to the Highway Reconstruction Project.

## II. PROCEDURAL POSTURE

¶13 On December 27, 2011, the DOT filed a motion in limine with the circuit court, requesting the court to exclude evidence of damages caused by the LLC's loss of direct access and proximity to 118th Avenue. On November 5, 2012, the circuit court granted the DOT's motion in limine.

¶14 The circuit court reasoned that Wis. Stat. § 32.09(6g) allows only damages that result from an easement. The circuit court stated that § 32.09(6g) "merely identifies the damages which are allowed if, and only if, <u>caused</u> by a <u>taking</u> by the state." (Emphasis in original.) According to the circuit court, the LLC's loss of direct access and proximity to 118th Avenue "was caused by the vacation of the street [118th Avenue], not by the taking of any property from the plaintiff. Damages are allowed under § 32.09(6g), Stats., only for loss which was a consequence of the particular taking."

¶15 On November 9, 2012, the DOT and the LLC entered into a stipulated judgment that preserved each party's right to appeal the circuit court's ruling on the DOT's motion in limine. The parties agreed that $21,000 was the fair value of the temporary limited easement itself. The DOT already paid the LLC that amount in damages.

¶16 On November 20, 2013, the court of appeals reversed the circuit court's decision granting the DOT's motion in limine. <u>118th St. Kenosha, LLC v. DOT</u>, 2013 WI App 147, ¶1, 352

8

Wis. 2d 183, 841 N.W.2d 568. The court of appeals reasoned that "the temporary easement was integrally connected with the property's loss of direct access and proximity to 118th Avenue." Id., ¶9. The court noted that Wis. Stat. § 32.09(6g) requires that compensation for an easement be determined while "assuming the completion of the public improvement." Id., ¶10. Based on the "integral connection" between the temporary limited easement and the relocation of 118th Avenue, the court of appeals held that the "public improvement" mentioned in § 32.09(6g) refers to the relocation of 118th Avenue. Id. Thus, the court of appeals held that the LLC's damages for the temporary limited easement may include damages under § 32.09(6g) for the LLC's loss of direct access and proximity to 118th Avenue. Id., ¶11.

¶17 The DOT petitioned this court for review, and we granted the petition.

### III. STANDARD OF REVIEW

¶18 We must determine whether the circuit court properly excluded evidence that the LLC's compensation for the temporary limited easement should include damages under Wis. Stat. § 32.09(6g) for the LLC's loss of direct access and proximity to 118th Avenue. "This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion." Weborg v. Jenny, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191 (citing State v. Ringer, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448). "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably

9

supported by the facts of record." 260 N. 12th St., LLC v. DOT, 2011 WI 103, ¶38, 338 Wis. 2d 34, 808 N.W.2d 372 (citing Ringer, 326 Wis. 2d 351, ¶24).

¶19 To determine whether evidence was admissible under Wis. Stat. § 32.09(6g), we must interpret and apply that statute. See id., ¶39. "Statutory interpretation and application present questions of law that we review de novo while benefiting from the analyses of the court of appeals and circuit court." Id. (citing E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist., 2010 WI 58, ¶20, 326 Wis. 2d 82, 785 N.W.2d 409).

¶20 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. (citing Bruno v. Milwaukee Cnty., 2003 WI 28, ¶¶8, 20, 260 Wis. 2d 633, 660 N.W.2d 656; Wis. Stat. § 990.01(1)). We interpret statutory language in the context of the statute in which it is used and in relation to closely-related statutes. Id., ¶46 (citations omitted). We do not consult extrinsic sources of interpretation, such as legislative history, if the statutory language is unambiguous. Id. (citations omitted).

IV. ANALYSIS

10

A. The DOT's Arguments

¶21  The DOT argues that the LLC cannot recover damages under Wis. Stat. § 32.09(6g) for the LLC's loss of direct access and proximity to 118th Avenue.   First, the DOT argues that damages for a temporary limited easement are not compensable under § 32.09(6g), which the DOT argues is "ineffective and unsuitable" for calculating damages for a temporary limited easement.   According to the DOT, a temporary limited easement often does not affect the value of the subject property, so damages under § 32.09(6g) would unconstitutionally result in no compensation for the property owner in many cases.   The DOT urges this court to hold that rental-value damages for a temporary limited easement are available under the Wisconsin Constitution's takings clause[9] or § 32.09(6).[10]

---

[9] Article I, Section 13 of the Wisconsin Constitution provides that "[t]he property of no person shall be taken for public use without just compensation therefor."

[10] Wisconsin Stat. § 32.09(6) (intro.) provides:

In the case of a partial taking of property other than an easement, the compensation to be paid by the condemnor shall be the greater of either the fair market value of the property taken as of the date of evaluation or the sum determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the following items of loss or damage to the property where shown to exist . . . .

¶22  If this court holds or assumes without deciding that damages for a temporary limited easement are compensable under Wis. Stat. § 32.09(6g), the DOT argues that the LLC may not recover damages under § 32.09(6g) for its loss of direct access and proximity to 118th Avenue, for two reasons.  First, the DOT argues that, under the facts of this case, the LLC's damages under § 32.09(6g) for the temporary limited easement may not include damages for the LLC's loss of direct access and proximity to 118th Avenue because the temporary limited easement did not cause the LLC to lose direct access and proximity to 118th Avenue.  Instead, according to the DOT, the relocation of 118th Avenue caused the LLC to lose direct access and proximity to 118th Avenue.  The DOT relies on Jantz v. State, 63 Wis. 2d 404, 217 N.W.2d 266 (1974), and More-Way North Corp. v. State Highway Commission, 44 Wis. 2d 165, 170 N.W.2d 749 (1969), for the proposition that damages for a temporary limited easement may not include damages which were not caused by the temporary limited easement.

¶23  Second, the DOT argues that the LLC's damages for the temporary limited easement may not include damages under Wis. Stat. § 32.09(6g) for the LLC's loss of direct access and proximity to 118th Avenue because the DOT used its police power to limit the LLC's direct access and proximity to 118th Avenue.[11]

---

[11] At oral argument, the DOT argued that Wis. Stat. § 84.29 gives it a police power to relocate a public road, including 118th Avenue.

Relying on <u>Stefan Auto Body v. State Highway Commission</u>, 21 Wis. 2d 363, 124 N.W.2d 319 (1963), and <u>Chicago & Northwestern Railway Co. v. Railroad Commission of Wisconsin</u>, 178 Wis. 485, 188 N.W. 86 (1922), the DOT argues that relocating a public road is an exercise of the police power. The DOT relies on <u>Surety Savings & Loan Ass'n v. Department of Transportation</u>, 54 Wis. 2d 438, 195 N.W.2d 464 (1972), to argue that a landowner may not recover damages for loss of direct access to a public road if the State eliminated that direct access under its police power and if the landowner retained other access to the public road. Because the LLC retained indirect access to 118th Avenue via 74th Place after 118th Avenue was relocated, the DOT argues, the LLC's damages for the temporary limited easement may not include damages under § 32.09(6g) for the LLC's loss of direct access to 118th Avenue.

### B. The LLC's Arguments

¶24 The LLC argues that its damages for the temporary limited easement should include damages under Wis. Stat. § 32.09(6g) for the LLC's loss of direct access and proximity to 118th Avenue. The LLC notes that § 32.09 (intro.) states: "In all matters involving the determination of just compensation in eminent domain proceedings, the following rules shall be followed . . . ." The LLC relies on the language of § 32.09(6g) to argue that § 32.09(6g) provides the proper method of calculating the LLC's damages for the temporary limited easement. Subsection 32.09(6g) states that its method for determining damages applies "[i]n the case of the taking of an

13

easement . . . ." The LLC argues that this statutory language does not distinguish between temporary and permanent easements. According to the LLC, the DOT is asking this court to improperly insert the word "permanent" immediately before the word "easement."

¶25 The LLC further argues that, according to the language of Wis. Stat. § 32.09(6g), the LLC's damages for the temporary limited easement may include damages for the LLC's loss of direct access and proximity to 118th Avenue. The LLC notes that § 32.09(6g) states, by reference to § 32.09(6), that damages for loss of access and proximity are compensable under § 32.09(6)(b) and (6)(e) "where shown to exist." The LLC argues that § 32.09(6g)'s command to "assum[e] the completion of the public improvement" when calculating damages for an easement refers to the relocation of 118th Avenue, not the construction of the double-throated driveway. Specifically, § 32.09(6g) provides compensation "determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement . . . ." Wis. Stat. § 32.09(6g).

¶26 Additionally, the LLC argues that it lost direct access to 118th Avenue when 118th Avenue was relocated, and that a landowner is entitled to compensation for loss of direct access to a public road abutting the landowner's property. The LLC quotes our prior cases that have stated a right to access a public road abutting one's property "is a property right, the

14

taking of which requires compensation," Narloch v. DOT, 115 Wis. 2d 419, 430, 340 N.W.2d 542 (1983) (citation omitted), and "the deprivation or restriction of an existing right of access is compensable under Wis. Stat. § 32.09(6)." Nat'l Auto Truckstops, Inc. v. DOT, 2003 WI 95, ¶18, 263 Wis. 2d 649, 665 N.W.2d 198.

¶27 The LLC disagrees with the DOT's argument that the LLC's loss of direct access and proximity to 118th Avenue is separate and distinct from the temporary limited easement. The LLC argues that the temporary limited easement was an "integral" part of the Highway Reconstruction Project, which caused 118th Avenue to be relocated. According to the LLC, 118th Avenue would not have been relocated if the DOT did not acquire a temporary limited easement to build the double-throated driveway that connected the commercial property to 74th Place. The LLC reasons that its appraiser stated in an affidavit that the commercial property would have had legally insufficient access for emergency vehicles if its only access point were the preexisting single-lane driveway connecting the commercial property to 74th Place. The LLC argues that Jantz and More-Way North are distinguishable because each of those cases involved a landowner's attempt to receive damages for a public road's change of grade, whereas the LLC is not seeking damages for change of grade.

¶28 The LLC also disagrees with the DOT's argument that the DOT exercised its police power when it relocated 118th Avenue. The LLC argues that the DOT used its eminent domain

15

powers under Wis. Stat. ch. 32 to acquire the temporary limited easement and used its eminent domain power under Wis. Stat. § 84.09 to relocate 118th Avenue. The LLC argues that in National Auto Truckstops, 263 Wis. 2d 649, Crown Zellerbach Corp. v. Department of City Development of Milwaukee, 47 Wis. 2d 142, 177 N.W.2d 94 (1970), and Hastings Realty Corp. v. Texas Co., 28 Wis. 2d 305, 137 N.W.2d 79 (1965), we rejected the State's attempt to characterize its use of its eminent domain power as an exercise of its police power.

¶29 Finally, the LLC rejects the DOT's assertion that the LLC dedicated to the State its legal right to access 118th Avenue. The LLC argues that the DOT abandoned this assertion before the circuit court.

### C. General Legal Principles

¶30 Because we decide this case on one narrow ground, we need not decide the broader issues today. Maryland Arms, 326 Wis. 2d 300, ¶48. We do, however, briefly depart to discuss pertinent general legal principles. "'The right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon.'" Hastings Realty, 28 Wis. 2d at 310 (quoting Royal Transit, Inc. v. Village of West Milwaukee, 266 Wis. 271, 277, 63 N.W.2d 62 (1954)). "'[H]ighway access rights are but one of a bundle of rights which appertain to a parcel of real estate.'" Id. at 311 (quoting Nick v. State Highway Comm'n, 13 Wis. 2d 511, 517-18, 109 N.W.2d 71 (1961) (Currie, J., concurring)).

16

¶31 However, when the government relocates a road, it is not always required to compensate all who are adversely affected by the relocation. Surety Savings & Loan, 54 Wis. 2d at 444. The State may exercise its police power to authorize the relocation of a highway. Chicago & N.W. Ry. Co., 178 Wis. at 491 ("The state has ample power, in the exercise of the police power, to authorize the relocation of the highway in order to protect the public . . . .") (citations omitted). "Where access to a highway is controlled under the exercise of the police power and reasonable access remains, no compensation is required." Schneider v. State, 51 Wis. 2d 458, 462, 187 N.W.2d 172 (1971) (citing Nick, 13 Wis. 2d 511). Eminent domain can occur contemporaneously with the exercise of police power. Wis. Stat. § 32.09(4).

¶32 In Howell Plaza, Inc. v. State Highway Commission, 92 Wis. 2d 74, 80, 284 N.W.2d 887 (1979), we stated, "there must be a taking before there can be a claim for just compensation." In More-Way North we stated, "[M]ere consequential damage to property resulting from governmental action is not a taking thereof. Sec. 13, art. I, Wis. Const., . . . does not undertake, . . . to socialize all losses, but only those which result from a taking of property." More-Way N. Corp., 44 Wis. 2d at 170 (quoting Wis. Power & Light Co. v. Columbia Cnty., 3 Wis. 2d 1, 6, 87 N.W.2d 279 (1958)) (internal quotation marks omitted).

¶33 Distinct projects are frequently undertaken during a highway construction project, but that does not necessarily

17

merge each project into one single compensable act.  We explained in Jantz that the fact "[t]hat both undertakings are related to a single overall highway improvement purpose does not merge the actions into a single act . . . ."  Jantz, 63 Wis. 2d at 411.  Further, even if a highway construction project results in damages that are compensable under a particular statute, those damages cannot be recovered in a claim brought under the wrong statute.  See id. at 411-12.

¶34  This discussion begs the question: had the DOT not undertaken the temporary limited easement project to create the additional driveway with access to 74th Place, would the LLC otherwise have a viable claim for the damages it seeks?  Cf. DeBruin v. Green Cnty., 72 Wis. 2d 464, 471, 241 N.W.2d 167 (1976).  We need not endeavor to answer this question today.

### D. Damages Available for an Easement under Wis. Stat. § 32.09(6g)

¶35  The LLC seeks damages under Wis. Stat. § 32.09(6g) for the commercial property's diminution in value caused by its loss of direct access and proximity to 118th Avenue.  The LLC's loss of direct access and proximity to 118th Avenue was caused by the relocation of 118th Avenue.  We begin our analysis with a plain reading of the statute.  Subsection 32.09(6g) provides:

> In the case of the taking of an easement, the compensation to be paid by the condemnor shall be determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general

18

benefits, and without restriction because of enumeration but without duplication, to the items of loss or damage to the property enumerated in sub. (6)(a) to (g) where shown to exist.

¶36 It is true that Wis. Stat. § 32.09(6g) allows for recovery of damages enumerated in § 32.09(6)(a) to (6)(g), but compensation is due for "the taking of an easement." The LLC argues that, because its commercial property was subject to a temporary limited easement, § 32.09(6g) allows the LLC to recover damages for its loss of direct access and proximity to 118th Avenue under § 32.09(6)(b) and (6)(e), respectively. However, the LLC falls short of adequately explaining how the "taking of the easement" caused these damages. Here, the temporary limited easement provided the LLC with additional access to 74th Place, but the easement did not cause the LLC to lose direct access and proximity to 118th Avenue.[12]

---

[12] We note that the plain language of Wis. Stat. § 32.09(6g) also causes us to pause when considering whether that statutory subsection is designed to apply to temporary limited easements in the first instance. See also More-Way N. Corp. v. State Highway Comm'n, 44 Wis. 2d 165, 173-75, 170 N.W.2d 749 (1969) (holding that a temporary limited easement did not effect an actual permanent taking). First, the plain language of the statute references easements, not temporary limited easements. Second, the before and after valuation approach arguably creates confusion in temporary limited easement cases because it does not consider the temporary nature of the easement. Third, this statutory subsection may not apply to a temporary limited easement because a temporary limited easement often will terminate upon completion of the project. Thus, a benefit, rather than a detriment, may accrue to the property. Thus, the before and after valuation leaves no room for compensation for many temporary easements. As a result, Wisconsin Constitution, Article I, Section 13, and W.H. Pugh Coal Co. v. State, 157 Wis. 2d 620, 631, 460 N.W.2d 787 (Ct. App. 1990), instruct that rental value may be the appropriate measure, rather than
(continued)

19

¶37 Subsection 32.09(6g) states that compensation for an easement is calculated by considering the fair market value of the whole property immediately before and after the "date of evaluation,"[13] which other statutory provisions explain is the date on which the easement is acquired.  Wis. Stat. §§ 32.09(1), 32.06(7).[14]  Thus, the plain purpose of considering the "date of evaluation" is to determine the damages to the property caused by the taking of an easement.  See Hoekstra v. Guardian Pipeline, LLC, 2006 WI App 245, ¶13, 298 Wis. 2d 165, 726 N.W.2d 648 (holding that § 32.09(6g) provides compensation for damages that occurred "'because of'" an easement) (quoting Arents v. ANR Pipeline Co., 2005 WI App 61, ¶14, 281 Wis. 2d 173, 696 N.W.2d 194).  We conclude that § 32.09(6g) plainly allows compensation for damages caused by the taking of an easement.  See Kalal, 271 Wis. 2d 633, ¶45.

¶38 As we assume, without deciding, that a temporary limited easement is compensable under Wis. Stat. § 32.09(6g), we

_____

§ 32.09(6g), when a temporary easement occurs.  The $21,000 awarded in this case seems to compensate for the temporary limited easement's rental value and resulting loss of landscaping.

[13] The "date of evaluation" generally is the date on which the easement is acquired.  Wis. Stat. §§ 32.09(1), 32.06(7); see also 260 N. 12th St., LLC v. DOT, 2011 WI 103, ¶45, 338 Wis. 2d 34, 808 N.W.2d 372; Fields v. Am. Transmission Co., 2010 WI App 59, ¶13, 324 Wis. 2d 417, 782 N.W.2d 729.

[14] We may consider closely related statutory provisions. See State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

proceed to the crux of the issue at hand, which distills into whether under these facts, damages are properly awarded under § 32.09(6g) for the commercial property's diminution in value caused by the loss of direct access and proximity to 118th Avenue.

¶39 In so doing, we first turn to case law which has analyzed how damages for an easement are determined under Wis. Stat. § 32.09(6g). Recognizing that More-Way North determined that a temporary limited easement did not effect an actual permanent taking, we nonetheless endeavor to further discuss § 32.09(6g) damages for easements. See More-Way N. Corp., 44 Wis. 2d at 176.

¶40 For example, in Hoekstra, Guardian Pipeline obtained an easement to install a natural gas transmission pipeline on the Hoekstras' property. Hoekstra, 298 Wis. 2d 165, ¶1. At trial, the circuit court excluded evidence that prospective buyers' fear of gas pipelines reduced the value of the Hoekstras' property. Id., ¶15. The court of appeals reversed because the property's alleged diminution in value was caused by the easement. See id., ¶¶17-23.

¶41 Similarly, in Savage v. American Transmission Co., 2013 WI App 20, 346 Wis. 2d 130, 828 N.W.2d 244, American Transmission acquired a new easement to add more wires to an electricity transmission line that was already on Savage's property. Savage, 346 Wis. 2d 130, ¶4. At trial, the circuit court excluded evidence that the easement precluded Savage from using the easement property as he could have before. Id., ¶6.

21

The court of appeals reversed and concluded that because the new easement precluded Savage from using the property as he could have before, Savage could introduce evidence of damages caused by the new easement's restrictions. Id., ¶¶15-16.

¶42 Fields v. American Transmission Co., 2010 WI App 59, 324 Wis. 2d 417, 782 N.W.2d 729, further demonstrates that a Wis. Stat. § 32.09(6g) claim for damages is not as sweeping as the LLC suggests. American Transmission acquired a new easement to replace the electricity transmission poles on the Fields' property. Fields, 324 Wis. 2d 417, ¶¶5, 6, 11. Poles were previously located on the Fields' property under an existing easement from 1948. Id., ¶¶1, 4. The Fields sought compensation for the new easement. Id., ¶1. In proving their claim under § 32.09(6g), the Fields were entitled only to damages caused by the new easement, not for the 1948 easement. Id.

¶43 These three court of appeals cases demonstrate that, even where a more permanent easement taking occurs, damages under Wis. Stat. § 32.09(6g) are limited to those caused by the easement at issue. Because the temporary limited easement did not cause the diminution in value of the LLC's commercial property, no published Wisconsin case interpreting § 32.09(6g) allows the LLC to recover damages for its commercial property's diminution in value as part of the LLC's damages for the temporary limited easement.

22

E. May the LLC's Damages under Wis. Stat. § 32.09(6g) Include the Commercial Property's Diminution in Value Caused by the Relocation of 118th Avenue?

¶44 Our analysis of whether damages are compensable under Wis. Stat. § 32.09(6g) for the commercial property's diminution in value caused by the relocation of 118th Avenue is further guided by precedent which has considered what damages are due when a taking occurs in a highway relocation project. In the case at issue, it is not disputed that no property was taken from the LLC and the property's size and boundaries remained unchanged. However, the LLC lost the commercial property's proximity and direct access to 118th Avenue when that road was relocated. The following cases, while not § 32.09(6g) easement cases, inform our analysis.

¶45 For example, in Carazalla v. State, 269 Wis. 593, 70 N.W.2d 208 (1955) ("Carazalla I"), the Carazallas' farm abutted United States Highway 51 in Marathon County. Carazalla I, 269 Wis. at 595. The county used eminent domain to acquire 13.05 acres of the Carazallas' farm property, but the property taken did not include an access point to the highway. See id. at 595, 597. Highway 51 was then constructed on the acquired land. Id. at 595-97. At trial over compensation due for the taking, the circuit court allowed evidence that the relocation of Highway 51 caused the Carazallas' property to become less valuable. Id. at 597-98. Initially, in Carazalla I, Justice Currie's unanimous opinion held that the circuit court did not err by allowing that evidence. Id. at 606-08.

23

¶46 On rehearing in Carazalla v. State, 269 Wis. 593, 71 N.W.2d 276 (1955) ("Carazalla II"), however, we made clear that the court erred in admitting such evidence. Justice Currie's unanimous opinion thus concluded that in calculating compensation due for the partial taking of land, the circuit court indeed erred when it allowed the jury to consider the diminution in value caused by the relocation of the highway. Carazalla II, 269 Wis. at 608c. We clarified that Carazalla I was incorrect to conclude that the partial taking of land and relocation of the highway "were so interwoven that" the two acts were "an inseparable whole," because the two acts really were "separate and distinct." Id. In other words, we clarified in Carazalla II that compensation for a taking cannot include damages for a lost point of access to a highway if the point of access was lost because of an act separate from the taking, such as the highway's relocation.

¶47 Similarly, in Jantz, Jantz sought damages for a partial taking of land that occurred during a highway relocation. Jantz owned a bar and grill that abutted United States Highway 41-45 and Maple Road in Washington County. Jantz, 63 Wis. 2d at 406. Jantz's property had access to Highway 41-45 only via Maple Road. See id. The DOT used eminent domain to acquire .38 acres of Jantz's land adjacent to Highway 41-45. Id. The property taken did not include Jantz's point of access to the highway. See id. The DOT built additional highway lanes on the strip of land acquired from Jantz. Id. The DOT also relocated Maple Road. Id. Jantz's

24

property maintained access to Highway 41-45 via Maple Road. Id. Jantz argued, however, that the value of her bar and grill declined because the roadway relocation left her with circuitous access to the highway.[15] Id. at 406-07. At trial, the circuit court excluded evidence that the circuity of access or change in grade reduced the value of Jantz's property. Id. at 407.

¶48 On appeal, we upheld the circuit court's exclusion of that evidence. Id. at 412. We reasoned that the relocation of Maple Road was separate from the partial taking of land. Id. at 411. In other words, damages for the circuitous access to the relocated highway were not included in the compensation for the partial taking because those damages were not "a consequence of the taking of .38 acre of land . . . ." Id. at 412. Even if the relocation of Maple Road and the partial taking of Jantz's land were somehow "related to a single overall highway improvement purpose," that fact would not transform the partial

---

[15] Jantz also argued that her property's value declined because of the change of grade of the highway, the right-of-way due to the change of grade, the loss of view to and from the property, and loss of income of the bar and grill. Jantz v. State, 63 Wis. 2d 404, 406-07, 217 N.W.2d 266 (1974). The LLC is incorrect in concluding that Jantz involved only a change in grade.

taking claim into a valid claim for damages based on the highway project's negative effect on Jantz's business. Id. at 411.[16]

¶49 Likewise, Schneider v. State, 51 Wis. 2d 458, 187 N.W.2d 172 (1971), like Carazalla II and Jantz, stands for the proposition that even in a compensation claim for a partial taking of land, the damages due are for the taking rather than for a relocated highway's impacts on the property. In Schneider, Schneider owned land abutting State Highway 151 and Thompson Road in Dane County. Schneider, 51 Wis. 2d at 460. In 1956 the State of Wisconsin designated State Highway 151 as a controlled-access highway. Id. Schneider maintained direct access to the highway with a private permit and indirect access to the highway via Thompson Road. Id. In 1968 the State used eminent domain to acquire 3.29 acres of Schneider's land to build a frontage road on the acquired land. Id. The land taken did not include Schneider's access point to the highway. See id. Rather, Schneider's access to the highway was reduced because the State revoked Schneider's private permit to directly access the highway and closed the Highway 151-Thompson Road intersection that Schneider used to access the highway. Id.

---

[16] We noted that Jantz perhaps may have been entitled to recover damages under Wis. Stat. § 32.18 for harm to her property caused by Maple Road's change in grade. Jantz, 63 Wis. 2d at 411. However, those damages were unavailable in Jantz's lawsuit because Jantz brought suit under Wis. Stat. § 32.09(6) to recover compensation for the partial taking, and the partial taking did not cause the change in grade. Id. at 411-12.

The new frontage road became Schneider's only access to the highway. Id. at 463. At the trial on the amount of compensation owed to Schneider, the jury's award for the partial taking of land included damages for the property's diminution in value caused by the property's loss of access to the highway. See id. at 460-61, 464. The circuit court later concluded that it was incorrect to allow evidence of diminution in value that resulted from loss of access to the highway. Id. at 464.

¶50 On appeal we affirmed the circuit court's conclusion that damages for the partial taking of land could not include damages for the diminution in value of Schneider's land that resulted from the closing of Thompson Road and the designation of Highway 151 as a controlled-access highway. Id. at 465-66. We reasoned that the partial taking of Schneider's land was "separate and distinct" from Schneider's loss of access to Highway 151 and the resulting diminution in value of Schneider's land. Id. at 463 (citing Carazalla II, 269 Wis. at 608c).

¶51 Not surprisingly, the LLC attempts to distinguish the above cases and instead primarily relies on National Auto Truckstops, 263 Wis. 2d 649, for the proposition that compensation under Wis. Stat. § 32.09(6g) for the temporary limited easement should include damages for the commercial property's diminution in value caused by the relocation of 118th

27

Avenue.[17] Notably, National Auto Truckstops neither overruled nor modified Carazalla II, Jantz, or Schneider. As a result, we examine whether these cases can coexist in our jurisprudence.

¶52 In National Auto Truckstops the truckstop's strip of land, which contained the only points of direct access to the highway, was taken. Nat'l Auto Truckstops, 263 Wis. 2d 649, ¶¶4-5. National Auto owned a truckstop near the intersection of United States Highway 12 and Interstate 94 in St. Croix County. Id., ¶4. The DOT used eminent domain to acquire .27 acres from the truckstop to build a frontage road on the land taken and to

---

[17] Relying on National Auto Truckstops, Inc. v. Department of Transportation, 2003 WI 95, 263 Wis. 2d 649, 665 N.W.2d 198, Crown Zellerbach Corp. v. Department of City Development of Milwaukee, 47 Wis. 2d 142, 177 N.W.2d 94 (1970), and Hastings Realty Corp. v. Texas Co., 28 Wis. 2d 305, 137 N.W.2d 79 (1965), the LLC argues that the relocation of 118th Avenue was an exercise of the DOT's eminent domain power rather than police power and, therefore, the LLC's damages for the temporary limited easement should include damages that resulted from the relocation of 118th Avenue.

However, even if the LLC correctly characterizes the holdings of these cases, they are distinguishable. In these three cases, whether the taking or easement caused the loss of access to a road was not at issue. In the present case, by contrast, the fact that the temporary limited easement did not cause the LLC's loss of direct access and proximity to 118th Avenue is fatal to the LLC's Wis. Stat. § 32.09(6g) claim. Hastings is further distinguishable because the court in that case did not determine whether the plaintiff was entitled to compensation for a taking. Instead, the court determined whether the plaintiff's lease was terminable under a provision that allowed for termination of the lease if the State took a portion of the leased property under eminent domain. Hastings, 28 Wis. 2d at 308-09. We do not consider whether the relocation of 118th Avenue was an exercise of the police power under these three cases.

28

widen the highway to four lanes.  Id.  Because the truckstop's only two points of direct access to the highway were actually located on the portion of land taken, the partial taking resulted in the truckstop losing its only points of direct access to the highway.  Id., ¶¶4-5.  National Auto's new access to the highway was via the new frontage road.  Id., ¶5.  At trial over compensation due for the partial taking of land, the circuit court excluded evidence that the truckstop declined in value because of its loss of two points of direct access to the highway.  Id., ¶7.

¶53 On appeal, we held the circuit court erred by excluding that evidence because at issue was whether the changed access was reasonable access.  Id., ¶2.  We held that, in order to award damages to a landowner for loss of access to a road, a jury must determine that the landowner was left without reasonable access to the road.  Id.  Thus, we held that if a jury determined that the changed access was not reasonable, then just compensation is due for the "deprivation or restriction of [National Auto's] right of access."  Id.  The evidence which related to National Auto's loss of access due to the taking was admissible insofar that the jury found that the changed access was unreasonable.  Central to the court's determination that the evidence was admissible, was the fact that the property taken contained the access points.  See id., ¶¶17-18.  National Auto Truckstops does not stand for the proposition that compensation for an easement includes damages for a commercial property's

diminution in value caused by a highway relocation project when no property was taken.

¶54 National Auto Truckstops is fundamentally distinguishable from the present case.  In National Auto Truckstops the parcel of land taken contained the landowner's only two points of access to a public road.  In the case at issue, none of the LLC's land was taken.  In National Auto Truckstops a permanent taking of land occurred which caused the size and boundaries of National Auto's property to change.  In the present case, the boundaries and size of the LLC's commercial property are unchanged.

¶55 Unlike the taking in National Auto Truckstops, the temporary limited easement at issue did not cause the LLC to lose direct access and proximity to 118th Avenue.  In the present case, not only was no land taken, but by providing the LLC with a permanent additional driveway pursuant to the temporary limited easement, the LLC gained more, not less, access to 74th Place. The temporary limited easement at issue did not cause the relocation of 118th Avenue nor did the LLC lose direct access and proximity to 118th Avenue because of the easement.   Therefore, compensation due for this temporary limited easement does not properly include damages for the commercial property's diminution in value based on its lost direct access and proximity to 118th Avenue, which resulted from the relocation of 118th Avenue.

¶56 Hence, Carazalla II, Jantz, Schneider, and National Auto Truckstops all comport with the plain language of Wis.

30

Stat. § 32.09(6), which allows "compensation" for damages caused by "a partial taking of property." See Wis. Stat. § 32.09(6). In each case, the allowable damages were caused by the claimed taking. These cases, however, do not stand for the proposition that the LLC may recover the damages sought here when no property was taken from the LLC, its property's boundaries remained intact, and its claim is for "the taking of an easement." At its core, this commercial property's diminution in value resulted from its loss of direct access and proximity to a relocated road, not because of the temporary limited easement. No case supports the notion that the LLC's claim under § 32.09(6g) for a temporary limited easement would include the near half million dollar diminution in value which resulted from 118th Avenue being relocated.

¶57 We conclude that Carazalla II, Jantz, Schneider, and National Auto Truckstops can be reconciled in the present case, and in fact, produce consistent analyses. Carazalla II, Jantz, and Schneider stand for the principle that damages for a partial taking cannot include damages for the impact caused by loss of access to a highway if the loss of access resulted from the relocation of the highway, rather than from the taking. National Auto Truckstops recognized that there are circumstances under which damages for loss of direct access to a highway could be recoverable. However, those circumstances are glaringly absent in the case at issue. Thus, we conclude that Carazalla II, Jantz, and Schneider are more compelling. We agree with the circuit court that the LLC's loss of direct access and proximity

31

to 118th Avenue "was caused by the vacation of the street [118th Avenue], not by the taking of any property from the plaintiff. Damages are allowed under § 32.09(6g), Stats., only for loss which was a consequence of the particular taking." The circuit court's analysis is consistent with the case law. See Jantz, 63 Wis. 2d at 412 (holding that the circuit court correctly limited damages in a partial taking claim to "damages sustained as a consequence of the taking"). Contrary to the LLC's suggestion, an award for a temporary limited easement, such as the one at issue, cannot serve to bootstrap damages that emanate from this road relocation, especially when, as here, no land has been taken and the property's boundaries are unchanged. See Carazalla II, 269 Wis. at 608c (holding that compensation for a partial taking cannot include damages for "interwoven" loss of point of access to a road because the taking did not cause the loss of the access point).

¶58 Whether the LLC may recover damages for its loss of direct access and proximity to 118th Avenue under a different theory is reserved for another day. According to the DOT, "No one disputes that loss of access can be compensable. It is just not compensable here." We agree. We conclude that the subject loss is not recoverable under Wis. Stat. § 32.09(6g) because this temporary limited easement did not cause those damages. Cf. Jantz, 63 Wis. 2d at 411-12. Simply stated, under these facts, the temporary limited easement did not cause the LLC to lose direct access and proximity to 118th Avenue; therefore, the LLC's damages for the commercial property's diminution in value

32

are not recoverable in its § 32.09(6g) temporary limited easement claim.

¶59 Accordingly, we hold that the LLC's claim under Wis. Stat. § 32.09(6g) for the temporary limited easement may not include evidence of damages for the commercial property's diminution in value caused by the relocation of 118th Avenue. The circuit court did not err by excluding that evidence. Because our holding is dispositive, we decline to address the other issues presented.

## V. CONCLUSION

¶60 For purposes of our analysis, we assume, without deciding, that a temporary limited easement is compensable under Wis. Stat. § 32.09(6g).

¶61 We conclude that the LLC is precluded from seeking damages under Wis. Stat. § 32.09(6g) for the commercial property's diminution in value which resulted from its loss of direct access and proximity to 118th Avenue due to the 118th Avenue relocation. The temporary limited easement did not cause the commercial property to lose direct access and proximity to 118th Avenue, so damages under § 32.09(6g) for the temporary limited easement cannot include damages for the loss of direct access and proximity to 118th Avenue. Because the LLC seeks damages for its loss of direct access and proximity to 118th Avenue, the circuit court did not err by excluding evidence of those damages in the § 32.09(6g) claim for taking an easement. Thus, the LLC improperly seeks compensation under § 32.09(6g) for the commercial property's diminution in value based on its

lost direct access and proximity to 118th Avenue when 118th Avenue was relocated.  Because our resolution of the narrow issue presented disposes of the LLC's claim, we need not address the other issues presented.  See Maryland Arms, 326 Wis. 2d 300, ¶48.

¶62 We affirm the circuit court's grant of the DOT's motion in limine seeking to exclude evidence of damages caused by the LLC's loss of direct access and proximity to 118th Avenue. We reverse the court of appeals and remand to the circuit court to dismiss the action.

*By the Court.*—The decision of the court of appeals is reversed and remanded.

¶63 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I agree with the majority opinion that the circuit court did not err in granting the Department of Transportation's motion to exclude evidence of the property's alleged diminution in value resulting from the relocation of 118th Avenue.

¶64 I further agree with the majority opinion that this case does not present, and the court does not decide, the following questions: whether the LLC suffered a diminution in property value from the relocation of 118th Avenue, whether the LLC's loss of direct access to 118th Avenue is compensable in some action unrelated to the damages award at issue in the present case, and whether the LLC's remaining access to 118th Avenue is reasonable as a matter of fact or law.

¶65 The majority opinion assumes without deciding that temporary limited easements (TLEs) fall within Wis. Stat. § 32.09(6g). The majority opinion does not resolve the issue even though the Department is certain to frequently confront the question whether TLEs are compensable under Wis. Stat. § 32.09(6g) and what the proper compensation is for the taking of a TLE.[1]

---

[1] Wis. Department of Transportation, Facilities Dev. Manual, Temporary Limited Easements, ch. 12 § 1-15.5, available at http://roadwaystandards.dot.wi.gov/standards/fdm/12-01.pdf#fd12-1 (last visited Dec. 4, 2014). See also majority op., ¶10 n.8 ("This project involved the taking of more than 50 temporary limited easements and more than one dozen permanent easements . . . .").

1

¶66 The majority opinion recites the tools for statutory interpretation but does not apply them to decide whether TLEs are compensable under Wis. Stat. § 32.09(6g). It merely assumes that § 32.09(6g) applies.

¶67 This court is developing the bad habit of assuming applicable legal principles without deciding the legal issues that are presented and briefed.[2] This habit "has the unfortunate effect of ducking [] vital issue[s] that should be decided,"[3] "fails to provide adequate guidance to litigants, the circuit courts, and the court of appeals,"[4] and flouts this court's "ultimate responsibility for development of the law."[5]

---

[2] See, e.g., State v. Tate, 2014 WI 89, ¶¶59-60, 357 Wis. 2d 172, 849 N.W.2d 798 (Abrahamson, C.J., dissenting) ("This court owes it to law enforcement, lawyers, litigants, circuit courts, the court of appeals, and the public at large to provide clarity about when a search has occurred . . . . Rather than dance around the issue of whether government access to cell phone location data in the instant cases is a search within the meaning of the Constitutions, I propose that the court address it head-on."); State v. Subdiaz-Osorio, 2014 WI 87, ¶159, 357 Wis. 2d 41, 849 N.W.2d 748 (Abrahamson, C.J., dissenting) ("Neither the Tate majority opinion nor Justice Prosser's lead opinion in Subdiaz-Osorio decides whether the government access in question constituted a search within the meaning of the United States and Wisconsin Constitutions. Both opinions assume that a search occurred."); State v. Nelson, 2014 WI 70, ¶¶63-64, 355 Wis. 2d 722, 849 N.W.2d 317 (Abrahamson, C.J., dissenting) ("The majority opinion assumes that the circuit court erred when it refused to allow the defendant to tell her side of the story. . . . I would hold that the circuit court erred.").

[3] State v. Rocha-Mayo, 2014 WI 57, ¶100, 355 Wis. 2d 85, 848 N.W.2d 832 (Prosser, J., dissenting).

[4] State v. Magett, 2014 WI 67, ¶96, 355 Wis. 2d 617, 850 N.W.2d 42 (Abrahamson, C.J., dissenting).

[5] State ex rel. Swan v. Elections Bd., 133 Wis. 2d 87, 108, 394 N.W.2d 732 (1986).

¶68  I turn to the text of Wis. Stat. § 32.09.

¶69  This section sets forth rules for the determination of just compensation. Various subsections describe just compensation in terms of fair market value, which is calculated differently under varying circumstances. Subsection (6g) of Wis. Stat. § 32.09 explicitly governs just compensation for "the taking of an easement." It provides as follows:

> In the case of the taking of an <u>easement</u>, the compensation to be paid by the condemnor shall be determined by deducting from the <u>fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation</u>, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the items of loss or damage to the property enumerated in sub. (6)(a) to (g) where shown to exist.

(Emphasis added).

¶70  A temporary limited easement (TLE) is, of course, an easement.[6] The text of § 32.09(6g) does not distinguish between permanent and temporary easements.

¶71  That Wis. Stat. § 32.09(6g) governs TLEs is supported not only by the statutory text but also by the broader statutory context. No other statute governs just compensation for the taking of a TLE or any other particular kind of easement. On the contrary, Wis. Stat. § 32.09 appears to govern the determination of just compensation for all takings by eminent

---

[6] <u>See generally</u> 9 <u>Nichols on Eminent Domain</u> ch. G32 (3d ed. 2014).

domain.[7]    It explicitly covers the determination of just compensation for "total" takings (Wis. Stat. § 32.09(5)), "partial" takings (Wis. Stat. § 32.09(6)), and, of course, takings of an easement (Wis. Stat. § 32.09(6g)).  Thus, the plain reading of § 32.09(6g) is that it applies to TLEs.

¶72 Although the majority opinion assumes without deciding that Wis. Stat. § 32.09(6g) applies in the present case involving the taking of a TLE, it expresses qualms.  Lengthy footnote 12 of the majority opinion explains why the text of Wis. Stat. § 32.09(6g) "causes us [the majority] to pause when considering whether that statutory subsection is designed to apply to temporary limited easements in the first instance."

¶73 Footnote 12 of the majority opinion offers various reasons why Wis. Stat. § 32.09(6g) might not apply to TLEs. Most importantly, the "before and after" fair market value rule for calculating damages for the taking of an easement does not fit valuation of a TLE.

¶74 The "before and after" fair market value rule determines "compensation . . . by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation . . . ."  Wis. Stat. § 32.09(6g). Generally, valuing a permanent easement using this calculation makes sense, but the calculation does not necessarily make sense when the taking is of a TLE.

---

[7] Wisconsin Stat. § 32.09 is titled "Rules governing determination of just compensation."

¶75 TLEs present significant valuation problems for just compensation.[8] Fair market value is ordinarily established by comparable sales. Yet there is generally no market for TLEs.[9] In addition, TLEs are partial interests in terms of both space and duration.[10] According to a leading text, the valuation of a TLE "depends on the nature of the taking."[11]

¶76 Few jurisdictions employ the "before and after" fair market value calculation to determine just compensation for TLEs because its application would produce unreasonable results. An important tool of statutory interpretation is that "[w]ords are given meaning to avoid absurd, unreasonable, or implausible results . . . ."[12] Thus, the text of Wis. Stat. § 32.09(6g) should be interpreted reasonably, to avoid absurd or unreasonable results.[13]

¶77 The leading text on eminent domain sets forth the following methods used to determine just compensation for the taking of TLEs:

---

[8] W.H. Pugh Coal Co. v. State, 157 Wis. 2d 620, 631, 460 N.W.2d 787 (1990).

[9] 9 Nichols on Eminent Domain, ch. G32, § G32.08[1][a] (3d ed. 2014).

[10] Id., § G32.08[7].

[11] Id., § G32.08[1][a].

[12] Force ex rel. Welcenbach v. Am. Family Mut. Ins. Co., 2014 WI 82, ¶30, 356 Wis. 2d 582, 850 N.W.2d 886.

[13] See id., ¶30.

- Fair and reasonable rental value of the land subject to the easement;

- Loss of use;

- Diminution of the rental value of the property adjacent to the temporary easement;

- Diminution of the rental value of the property as a whole;

- Diminution of the fair market value of the property during the period of the taking; and

- Fair rate of return.[14]

¶78 "The most widely accepted measure of compensation for the taking of a temporary easement appears to be the rental value of the property taken."[15] "Overall, the opinions of the United States Supreme Court support compensation for temporary takings based on the fair market rental value."[16] The rental value is the measure of compensation that was used in the instant case. I conclude a reasonable reading of Wis. Stat. § 32.09(6g) permits this method of valuation when the taking is of a TLE.

¶79 The majority opinion's assumption that the statute applies, alongside its assertion that the statute seems inapplicable to TLEs, engenders confusion. I would prefer this

---

[14] 9 Nichols on Eminent Domain, ch. G32, § G32.08[1][e] (3d ed. 2014).

[15] Id., § G32.08[2][a].

[16] Id., § G32.03[7]. See also W. H. Pugh Coal Co., 157 Wis. 2d at 631 ("With a temporary taking, 'the proper measure of compensation is the rental [value] that probably could have been obtained,' in other words, 'the reasonable value of the property's use.'" (Citations omitted.)).

6

court address head-on the question of whether and how Wis. Stat. § 32.09(6g) applies to TLEs.

¶80 Another point of confusion raised by the majority opinion is the refrain that "no property was taken" (majority op., ¶¶44, 53, 56). The instant case does, in my opinion (and apparently in most of the court's opinion), involve a taking, the cornerstone of condemnation proceedings giving rise to a claim for compensation.[17] Thus, if Wis. Stat. § 32.09(6g) does not apply, the property owner must still receive just compensation for the taking under the United States and Wisconsin Constitutions.[18] In determining just compensation for the taking of TLEs, I wonder whether it makes any difference whether Wis. Stat. § 32.09(6g) or constitutional principles of just compensation apply.

¶81 In sum, footnote 12 supports the conclusion that Wis. Stat. § 32.09(6g) does not apply to TLEs in a decision that contradictorily assumes (without deciding) that the statute does apply. This inconsistency in the opinion engenders unnecessary confusion.

¶82 The damages the parties agreed upon subject to review in this court reflect the rental value of the TLE. The result of the majority opinion is that the rental value is upheld as

---

[17] More-Way N. Corp. v. State Highway Comm'n, 44 Wis. 2d 165, 169, 170 N.W.2d 749 (1969).

[18] U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); Wis. Const. art. I, § 13 ("The property of no person shall be taken for public use without just compensation therefor.").

just compensation in the present case.  I agree with that result.

¶83  For the reasons set forth, I write separately.